BANK OF GILLETT *v.* BOTTS.

Opinion delivered March 12, 1923.

1. LANDLORD AND TENANT—LIEN FOR SUPPLIES.—Under Crawford & Moses' Dig., §§ 6889, 6890, a landlord who signed a note for his tenant to procure bags to preserve the rice crop, being primarily liable on such note, though signing as surety, upon paying such note was entitled to a lien for supplies furnished.

2. LANDLORD AND TENANT—CONVERSION OF CROP.—Where an. action was begun in time to enforce a landlord's lien, and a receiver was appointed to take charge of the crop, and thereafter a mortgagee of the crop seized and sold it, more than six months thereafter, and made a party to the original action, as against such mortgagee's claim that the lien of the landlord was lost by not bringing suit within six months after the rent was due, *held* that the mortgagee's act in selling the crop was a conversion, and the six-months' statute was inapplicable.

Appeal from Arkansas Chancery Court; *John M. Elliott,* Chancellor; affirmed.

### STATEMENT OF FACTS.

On the 20th of December, 1920, G. W. Botts brought this suit in equity against L. K. Menard to enjoin him from selling rice grown by said Menard and his codefendants on the land of the plaintiff, without paying the rent. The codefendants of Menard had previously filed suits in the justice court claiming a laborers' lien on said rice.

A temporary injunction was granted as prayed for in the complaint, and Menard was appointed receiver to take charge of the rice, and was directed to allow it to remain in the Gillett warehouse until the further orders of the court. Subsequently the Bank of Gillett took charge of said rice, without any order of the court, and sold it at private sale for the purpose of satisfying a mortgage which it held on the rice crop grown by Menard.

L. K. Menard was a witness for the plaintiff. According to his testimony, he grew a crop of rice on the land of the plaintiff in the Southern District of Arkansas County, Ark., during the year 1920. The landlord was to receive one-third of the rice for his rent. After the rice was threshed it was stored in the Gillett Warehouse Company. The Bank of Gillett had a mortgage on Menard's share of the crop. The plaintiff did not waive his landlord's lien on the crop. The witness never gave the bank any authority to take charge of the rice and sell it. The plaintiff never gave Menard permission to

authorize the bank to take charge of the rice and sell it. The rice had not been divided at the time the bank took charge of it and sold it.

G. W. Botts, the plaintiff, was a witness for himself. According to his testimony, he was to receive one-third of the rice grown by L. K. Menard as rent. The rice was grown on the farm of the plaintiff by Menard and delivered by the latter to the Gillett Warehouse Com-. pany to be kept in storage. The plaintiff never gave the Bank of Gillett authority to take charge of the rice and sell it, nor did he authorize Menard to do so. The plaintiff thought that the rice was being held in the warehouse by Menard as receiver in the suit filed by the plaintiff against Menard and others in the chancery court. Soon after the plaintiff found that the bank had disposed of the rice crop, he made it a party defend- ant to the present action.

The plaintiff signed the note of Menard to the Home Bank of DeWitt for $250. The signature is "G. W. Botts, surety." But the plaintiff signed this note to procure some sacks in which to put the rice after it was thrashed. It was necessary to put the rice in sacks to preserve it. The plaintiff in reality furnished these sacks to Menard as supplies to be used in gathering and preserving the rice crop. The plaintiff paid the note on June 1, 1921. The plaintiff's testimony in this re- spect is corroborated by that of Menard. Menard did not pay the plaintiff any of the rent or any part of the amount of the note given to procure money with which to purchase the rice bags.

According to the testimony of the Bank of Gillett, it had a valid mortgage on Menard's share of the rice, and no part of the mortgage indebtedness had been paid. Menard gave the bank authority to take the rice, sell it at private sale and apply the proceeds towards the satisfaction of the mortgage. The sale of the rice was made by the bank more than six months after the 20th day of December, 1920.

The chancellor found the issues in favor of the plaintiff, and a decree was accordingly entered in his favor for the amount of the rent and supplies due him.

*T. J. Moher*, for appellant.

1. Where the landlord furnishes necessary supplies to his tenant, or causes such supplies to be furnished the tenant, binding himself primarily therefor, he has his lien; but if he signs an obligation therefor only as surety, he has no lien. 83 Ark. 118; 80 Ark. 243.

2. Appellee is barred by the statute of limitations. C. & M. Digest, § 6889; 67 Ark. 455, 463.

*Botts & O'Daniel*, for appellee.

1. Appellee filed his suit to foreclose his landlord's lien within six months after the crop was harvested. Moreover appellant, a wrongdoer, is in no attitude to invoke the statute of limitations pertaining to landlords' liens. It was not a purchaser. Appellee would have three years to bring suit against it.

2. There is no dispute that appellee signed the note, that the rice bags were necessary for harvesting the crop, and that appellee paid off the note in full. He has his lien as landlord, and prior to the lien of the mortgagee. 62 Ark. 435; 143 Ark. 320, 327; 96 Ark. 268, 271.

HART, J., (after stating the facts). Sec. 6889 of Crawford & Moses' Digest gives the landlord a lien upon the crop grown upon the demised premises in any year for rent. Sec. 6890 gives the landlord a lien for any necessary supplies, either of money, provisions, clothing, stock, or other necessary articles advanced to the tenant with which to make and gather the crop. The section further provides that the lien shall have preference over any mortgage of the crop made by the tenant.

The bank insists, however, that it is only liable to the plaintiff for the amount of the rent due him, and is not liable for the note signed by the plaintiff, because the plaintiff signed the same as surety for the tenant. Hence they claim that the case falls within the doctrine

of *Kaufman* v. *Underwood*, 83 Ark. 118, where it was held that the landlord may not claim a lien as for supplies furnished to his tenant where the tenant purchased a horse for whose purchase price the landlord went security.

On the other hand, the plaintiff relies upon the case of *Walker* v. *Rose*, 153 Ark. 599. In that case it was held that where a landlord directed a merchant to furnish supplies to the tenant for which the landlord agreed to pay, and subsequently paid, the landlord, in effect, furnished the supplies to the tenant, and was entitled to a preference lien therefor. In that case, as here, a bank had a valid mortgage on the crop of the tenant, but knew that the tenant was raising the crop on the land of the plaintiff. The landlord had also become responsible to a mercantile company in the amount of certain advances made by it of money and supplies which were used by the tenant in the cultivation of his crops. The court held that the facts justified a finding that the money and supplies furnished through the mercantile company were in reality furnished by the appellee. Hence it was held that it was not a case of a landlord becoming a mere surety for his tenant, but that the facts warranted the conclusion that the landlord himself was primarily responsible to the mercantile company.

In the instant case, according to the testimony of the plaintiff, he in reality furnished the money to the tenant with which to buy the rice bags for the purpose of preserving the rice. It was absolutely necessary to put the rice in bags after it was thrashed in order to preserve it. Although the note shows that Botts, the plaintiff, signed it as surety, yet, under the attending circumstances, the chancellor was warranted in finding that Botts was primarily liable for the money, which was used in purchasing the rice bags to preserve the crop. The landlord paid the note at the bank, and the purchase of the rice bags inured to the benefit not only of the landlord but his tenant, and to the bank, which was the ten-

ant's mortgagee. The bank knew that the rice was grown on the land of the plaintiff, and therefore it is liable to plaintiff for its value to the extent of the landlord's lien for rent and the supplies furnished by him, which was established by the proof.

It is next insisted that the judgment should be reversed because the suit was not brought within six months after the rent was due and payable. The bank was not made a party to the suit until the 2nd day of September, 1921, and it is insisted that the rent was at least due at the end of the year 1920.

It will be remembered, however, that this suit was commenced by the landlord against the tenant and some laborers who were attempting to assert laborers' liens on the rice crop. The object of the suit was to establish the landlord's lien as superior to that of the laborers for the rent, and also the money advanced by him for supplies. Menard, the tenant, was appointed receiver by the chancery court to take charge of the rice and hold it in a designated warehouse until the further orders of the court.

It is true that the bank testified that it took the rice from the warehouse and sold it under authority given by the tenant. The court was warranted, however, in finding from the evidence of the plaintiff and the tenant that no authority was given to the bank to take charge of the rice and sell it under its mortgage. The action of the bank therefore amounted to a conversion of the rice which was in the hands of the court. Hence the limitation of six months provided by the statute for the continuance of a landlord's lien after the rent shall become due has no application.

It follows that the decree will be affirmed.