MORRILTON COTTON OIL COMPANY *v.* FRAUENTHAL
& SCHWARZ.

Opinion delivered February 25, 1924.

1. LANDLORD AND TENANT—LIEN FOR SUPPLIES.—Where a landlord signed a note to enable his tenant to secure money from a bank, the test of whether the landlord had a lien on the tenant's crop for such money as for supplies advanced depends upon whether the relation of debtor and creditor existed between the landlord and tenant, or whether the landlord was merely a surety; and the form in which the debt to the bank was evidenced was immaterial.

2. LANDLORD AND TENANT—LIEN FOR SUPPLIES—EVIDENCE.—Where a landlord signed a note with his tenant to enable the tenant to secure money from a bank, which renewed a chattel mortgage on the tenant's personal property and the crop to secure the note, evidence *held* to sustain a finding that the money obtained from the bank was not a loan to the landlord, but to the tenant, so that the landlord was not enitled to a lien as for supplies furnished to the tenant.

Appeal from Conway Chancery Court; *W. E. Atkinson,* Chancellor; affirmed.

*Strait & Strait,* for appellant.

The undisputed proof shows that Burke, the landlord, was not a mere surety on the note of the tenant, but, on the contrary, that the credit was extended to Burke, and was, as to him, an original undertaking, and that he in turn furnished the money to the tenant. The case falls clearly within the rule announced in *Foster* v. *Bradley,* 143 Ark. 320; 153 Ark. 599.

*R. W. Robins,* for appellees.

While the landlord's lien is primarily for rent alone, and the statute, C. & M. Digest, § 6890, has extended it to advances of necessary supplies, money, etc., yet it cannot be extended beyond the terms of the statute. 80 Ark. 243. The principles stated in *Kaufman* v. *Underwood,* 83 Ark. 118, are clearly applicable in this case, and should control. See also Tiffany, Landlord & Tenant, vol. 2, pp. 1911, 1912; 2 Underhill, Landlord & Tenant, 1414; *Id.* 1417; 16 R. C. L., § 498; 70 Miss. 60, 11 So. 566; 44 S. W. (Tex.) 915; 240 S. W. (Tex. Civ. App.) 641;

1 W. & W. (Tex.) 320; 106 S. W. (Tex. Civ. App.) 1145;
75 So. 383.

McCULLOCH, C. J.   This is an action instituted by
appellees in the chancery court to foreclose a chattel
mortgage executed to them by one McNeeley on a crop
of cotton.   McNeeley was a tenant of Mack Burke, who
was to have one-fourth of the crop as rent, and who fur-
nished supplies to McNeeley to the extent of the sum of
$82 to enable the latter to make and gather the crop.
The cotton (about a bale and a half) was gathered by
McNeeley, and he and Burke sold it to appellant, Morril-
ton Cotton Oil Company.   McNeeley executed to the
First National Bank of Morrilton a chattel mortgage,
subsequent to the execution of the mortgage to appellees,
conveying his interest in all crops and in certain other
personal property, to secure a debt of $192, with interest.
McNeeley, Burke, Morrilton Cotton Ooil Company and
the First National Bank of Morrilton were made defend-
ants in the action.   The controversy arises between appel-
lees and Burke concerning the latter's claim to a superior
lien on the crop, as landlord.

It is conceded that Burke is entitled to one-fourth
of the cotton as rent, and that he is entitled to payment
of his debt of $82 for supplies furnished to McNeeley,
but, after making these deductions from the price of the
cotton, it leaves a balance of $136, which appellees claim
under their mortgage, and which they recovered in the
decree rendered by the chancery court.   Burke claims a
lien on this balance of $136 for the debt due the First
National Bank of Morrilton, on the ground that it was
for money advanced by the bank to McNeeley for Burke.

The proof shows that Burke signed the note to the
bank with McNeeley, but he claims that it was money
which he furnished to McNeeley, and obtained it from
the bank.   This comes down to a question of proof.   If
Burke was a mere surety for his tenant, and nothing
more, he has no lien for the amount obtained from the
bank.   *Kaufman* v. *Underwood*, 83 Ark. 118.   On the
other hand, if Burke in fact obtained the money from the

bank and advanced it to McNeeley, or if he procured the loan for McNeeley from the bank and the relation of debtor and creditor subsisted primarily between Mc-Neeley and Burke, then the latter is entitled to a lien, regardless of the form in which the debt to the bank is evidenced. *Forster* v. *Bradney,* 143 Ark. 319; *Walker* v. *Rose,* 153 Ark. 599; *Bank of Gillett* v. *Botts,* 157 Ark. 478. The test is, whether or not McNeeley, the tenant, is indebted to Burke, his landlord, for supplies. If there is no debt in existence, but merely the relationship of principal and surety, there is no lien; but if there is a debt, there is a lien, as before stated, regardless of the form employed in obtaining the money from the bank.

The evidence is not, we think, sufficient to overturn, the finding of the chancellor as to the character of the relation between McNeeley, Burke and the bank. They both signed the note to the bank, and there is no written evidence of any debt from McNeeley to Burke. Burke testified that he procured the money from the bank and advanced it to McNeeley, but he is contradicted by his own admission to a witness introduced by appellees. This witness, Kuykendall, was the agent of appellees, and he testified that, when he went up to the farm where the cotton was raised, to see about hauling and shipping it, he had a conversation with McNeeley and Burke, in which it was stated to him that Burke only claimed $82 for advances in addition to the rent. The cashier of the bank was introduced, but he knew little, if anything, of the transaction, except what was shown on the face of the papers, that is the mortgage and the note.

It appears from the testimony that the bank held a mortgage executed by McNeeley on the same property during the preceding year, and their present mortgage was a renewal on the same property, except the crop, which was for a different year, and it embraced a lot of stock. McNeeley was not a tenant of Burke during the period of the first year covered by the mortgage to the bank, and he could not, therefore, have had any interest at that time in the transaction between McNeeley and

the bank.   This indicates a course of dealing between the bank and McNeeley which excludes the idea that the advances were made by the bank not to McNeeley but to Burke.   The inclusion in the mortgage to the bank of the live stock and other chattels, on which Burke had no lien as landlord, tended to show that the loan was made by the bank to McNeeley, and not to Burke.

Considering these circumstances, and the admission of Burke, made directly to appellee's agent, we cannot say that the chancellor erred in finding, from these facts, that the money obtained from the bank was not a loan to Burke, but was a loan direct to McNeeley, secured by the chattel mortgage and by Burke as surety.

The decree is therefore affirmed.