GARRETT *v.* STATE.

Opinion delivered May 31, 1926.

1.  HOMICIDE—SELF-DEFENSE—JURY QUESTION.—Testimony *held* to make a question for the jury whether a killing was done in self-defense.

2.  HOMICIDE—MANSLAUGHTER—SUFFICIENCY OF EVIDENCE.—Evidence in a murder case *held* sufficient to support a conviction for involuntary manslaughter.

3.  HOMICIDE—INSTRUCTION AS TO SELF-DEFENSE.—Though defendant's evidence that he shot in necessary self-defense was uncontradicted, it was nevertheless proper to instruct that the mere fear by defendant that deceased might attack him would afford no justification to the shooting of deceased if at the time deceased was making no hostile demonstration toward defendant.

4.  CRIMINAL LAW—INSTRUCTION INVADING JURY'S PROVINCE.—An instruction in a murder case that if there are two equally reasonable views of the evidence, one of which leads to the conclusion of guilt and the other to the conclusion of innocence, the latter conclusion should be adopted, *held* properly refused, as instructing on the inferences to be drawn from the evidence, and because the jury must not only ascertain the reasonableness of the testimony but also its truth.

5.  HOMICIDE—INSTRUCTION AS TO SELF-DEFENSE.—In a prosecution for murder, a requested instruction to acquit if there is a reasonable doubt whether defendant honestly believed that he was in danger of losing his life or receiving great bodily harm from the assault then being made upon him, *held* properly refused as assuming that an assault was then being made upon him.

6.  HOMICIDE—INSTRUCTION AS TO SELF-DEFENSE.—An instruction that, in determining whether defendant shot deceased in self-defense, the jury should place themselves in the position of defendant at the time of shooting, and that defendant should not be held to the same deliberate care in ascertaining the danger and force necessary to repel it as would be used by a person in afterwards viewing the situation, *held* correct.

7.  HOMICIDE—INSTRUCTION AS TO SELF-DEFENSE—MODIFICATION.—A requested instruction that a person attacked by another who manifestly intends to take his life or do him great bodily harm, he may pursue his adversary until he has secured himself from all damages, and, if he kills him in so doing, it is justifiable self-defense, *held* properly modified to give the person attacked the right to stand his ground and repel force with force, as the right to pursue the adversary is given only where the

adversary is apparently withdrawing merely for the purpose of seeking a better position to renew the combat.

8. CRIMINAL LAW—ADMISSIBILITY OF PHOTOGRAPHS.—Introduction of photographs of deceased after he was shot by defendant, accurately taken and clearly indicating the number and location of his wounds, though not necessary, was not prejudicial where they were not of a character to inflame the passions of the jury.

9. CRIMINAL LAW—ADMONITION TO JURY.—Where a jury, in a prosecution for murder, informed the judge twice that they could not agree, sending them back with the admonition that it was their duty to use every reasonable effort to return a verdict, *held* not an abuse of discretion.

Appeal from Bradley Circuit Court; *Turner Butler,* Judge; affirmed.

*Wilson & Martin,* for appellant.

*H. W. Applegate,* Attorney General, and *John L. Carter,* Assistant, for appellee.

SMITH, J. Appellant was indicted for the crime of murder in the first degree, alleged to have been committed by shooting and killing one Henry V. Browne, and, upon his trial, was convicted of involuntary manslaughter and given a sentence of one year in the penitentiary.

It is insisted that the verdict is contrary to the undisputed evidence, and that there was no testimony warranting the submission of the question of involuntary manslaughter.

Upon the question of the sufficiency of the testimony to support the verdict returned, it may be said that the following is a brief summary of the testimony: The deceased operated a ferry at Moro Bay, and appellant, who was a fisherman, had a fish-dock near the ferry, from which he loaded his fish to carry them to market. Deceased objected to appellant keeping his fish-dock near the ferry, and the men had quarreled about the matter. Deceased habitually went armed, and, on the morning when he was killed, was armed with a 45-caliber pistol. Appellant and two companions were at the fish-dock early in the morning on the day the killing occurred, and deceased, having heard them, went down to the ferry. When he came to the ferry, he inquired if any one wanted

to be ferried across the bay, and when the men who were there answered they did not, he told them to get away from the ferry. Appellant, who was armed with a shot-gun, inquired if deceased owned the road. Deceased then told appellant that he would give him a minute to get away, and that if he did not leave he would kill him. Appellant testified that, when deceased made this remark, he reached into his automobile, which was standing in the road, and got his gun, and when he did so he said to deceased, "Damn you, drop it," referring to the pistol which deceased had in his hand. He saw deceased raise the pistol as if he were going to rest it on his arm to improve his aim, when he fired, and the deceased fell.

The two eye-witnesses besides appellant himself were his friends and associates in the fishing business, and their testimony substantially corroborated that of appellant. The truth of their testimony was, of course, a question of fact for the jury. Appellant was armed with a shotgun with which he killed deceased, and, upon the whole case, we think the question was presented whether the accused was justified or excused in committing the homicide (§ 2342, C. & M. Digest), and we have concluded that the testimony was legally sufficient to support the verdict returned.

It is insisted for the reversal of the judgment of the court below that the court erred in giving and in refusing to give certain instructions; that error was committed in admitting certain testimony; and that the court erred in keeping the jury together for such length of time as to practically coerce the jury to return a verdict.

Exceptions were saved to nineteen of the instructions given by the court, but we will discuss only certain objections of a specific character, as the law of the case was declared in a general way under instructions which have often been approved by this court.

An instruction numbered 8 declared the law to be that "the mere fear on the part of appellant that the deceased might attack him would afford no justification to appellant to shoot deceased if deceased at the time

was making no demonstration of a hostile nature towards or against the defendant and was making no attempt to inflict upon him any great bodily harm," the objection being that there was no testimony from which the jury could have found that deceased was not making a demonstration of a hostile nature; and a similar objection was made to an instruction numbered 14, which told the jury that appellant would have had no right to fire the fatal shot if he had no reasonable apprehension of immediate and impending injury to himself.

It is not questioned that these instructions are correct declarations of law; the insistence is that there was no testimony upon which to base them, as the undisputed testimony shows the fatal shot was fired in appellant's necessary self-defense. As we have said, the jury had the right to consider and determine the truth of the testimony offered by appellant and his associates, and we do not think the testimony and the inference legally deducible therefrom are so undisputed that there was no question for the jury, and there was therefore no error in giving instructions 8 and 14.

Appellant requested an instruction numbered 2, reading as follows: "You are instructed that the jury would not be warranted in indulging in any suppositions that would lead to the conclusion of the defendant's guilt; it would not be sufficient if there were grave suspicions or strong probabilities that he might be guilty; moreover, it would not be sufficient if the evidence in the case should strongly preponderate against the defendant and tend to show his guilt; but the evidence must be of such a nature and so conclusive as to impress upon the minds of the jury the fact that he is guilty and beyond a reasonable doubt; (and if there are two equally reasonable views of the evidence which can be adopted, one of which leads to the conclusion of guilt and one of which leads to the conclusion of innocence, it is the duty of the jury to adopt that view of the evidence that leads to the conclusion of innocence and acquit him); *and* (or) if there should arise in the minds of the jury on the whole case,

a *reasonable* doubt as to whether the defendant be guilty or innocent, the jury should give him the benefit of the doubt, and acquit him."

The court struck out the sentence inclosed in the parentheses, beginning with the word "and" and concluding with the word "him," and struck out the word "or" included in the parentheses and inserted in lieu thereof the word "and." Exceptions were saved to the modification of the instruction.

We think no error was committed in thus modifying the instruction. The instruction as given was a correct declaration of the law. It is not proper for the court to tell the jury what inferences should be drawn or deduced from the testimony, as this is the province of the jury. The portion of the instruction which was stricken out was calculated to mislead the jury. The jury might find that a certain view of the testimony was reasonable, but was not true. The duty of the jury is to ascertain, not merely whether certain testimony is reasonable, but whether it is true. The jury should determine what the facts are—what the truth is—and the facts thus found should be the basis of the verdict. If the jury were unable to say that the testimony established beyond a reasonable doubt the truth of certain facts which were essential to support the finding of guilty, the defendant would be entitled to an acquittal, but, if this finding were made, then a verdict of guilty should be returned. The instruction as given conformed to this statement of the law, and was correct.

In the case of *Cooper* v. *State*, 145 Ark. 403, the accused requested an instruction which, if given, would have told the jury that, if there were two reasonable constructions which might be placed on the testimony, one tending to establish the defendant's guilt and the other his innocence, the jury should adopt the construction tending to establish innocence. This instruction was refused, and we held that no error was committed in doing so, for the reason, as was there said, that the question was which witnesses should be believed, and, as the

court had given appropriate instructions on weighing testimony, and also on the question of reasonable doubt, the instruction was properly refused. See also *Cummins* v. *State,* 163 Ark. 24; *Baker* v. *State,* 135 Ark. 404.

Appellant requested an instruction numbered 6, which reads as follows: "The jury are instructed that, in passing upon the question of whether the defendant, at the time of firing the shot that killed the deceased, acted in self-defense, as defined by other instructions given by the court, it is your duty to place yourselves as nearly as possible in the position of the defendant at the time of the shooting, taking into consideration all the facts and circumstances that then and there surrounded the defendant, and, when so considered, if there arises a reasonable doubt in your minds as to whether the defendant honestly believed, without fault or carelessness on his part, that he was then in danger of losing his life, or of receiving great bodily harm at the hands of deceased from the assault then being made upon him, then in that event you will find the defendant not guilty."

The court refused to give the instruction as requested, and appellant saved exception to that action.

The court then modified the instruction and gave it as modified. The modified instruction reads as follows: "The jury are instructed that, in passing upon the question of whether the defendant, at the time of firing the shot that killed the deceased, acted in self-defense, as defined by other instructions given by the court, it is your duty to place yourselves as nearly as possible in the position of the defendant at the time of the shooting, taking into consideration all the facts and circumstances that then and there surrounded the defendant, taking into consideration the excitement and confusion surrounding the situation, and the defendant should not be held to the same deliberate care in ascertaining the danger and the force necessary to repel it as would be used by a person in afterward viewing the situation from a place of safety uninfluenced by excitement or danger."

The instruction as given declared the law correctly, and was as favorable to appellant as he had the right to ask it to be. Besides, the instruction as requested was erroneous, in that it appears to assume as a fact that an assault was being made upon appellant when he fired the fatal shot.

Appellant requested an instruction numbered 8, which reads as follows: "The court instructs the jury that, when a person is attacked by another who manifestly intends to take his life, or to do him great bodily harm, the person attacked is not obliged to retire, but may pursue his adversary until he has secured himself from all danger, and, if he kills him in so doing, it is justifiable self-defense."

The court refused to give the instruction as requested, but modified it so that it read as follows: "The court instructs the jury that, when one person is attacked by another who manifestly intends to take his life, or to do him great bodily harm, the person attacked is not obliged to retire, but may stand his ground and repel force with force, and, if he kill him, his adversary, in so doing it is justifiable self-defense."

As thus modified the instruction was given, and appellant excepted both to the refusal of the court to give the instruction as requested and to the action of the court in giving it as modified.

In the case of *Carpenter* v. *State,* 62 Ark. 286, the court considered thoroughly the right of one who was murderously assaulted to slay his adversary. There was a review of the statute declaring this right and of the common law of which the statute was declaratory, and it would serve no useful purpose to review a subject which was there so well considered. In that case Mr. Justice BATTLE said: "But the rule is different where a man is assaulted with a murderous intent. He is then under no obligation to retreat, but may stand his ground, and, if need be, kill his adversary."

In that case Mr. Justice BATTLE quoted from East's Pleas of the Crown, page 271, the statement that one

who has been murderously assaulted "is not obliged to retreat, but may pursue his adversary until he has secured himself from all danger, and if he kill him in so doing it is called justifiable self-defense; as, on the other hand, the killing by such felon of any person so lawfully defending himself will be murder."

The circumstances under which one may pursue an adversary are explained in the case of *McDonald* v. *State,* 104 Ark. 317, in which case it was said that, where a person makes a violent and felonious assault on another, the latter, if free from fault, need not retreat, but may stand his ground, and may even pursue his assailant if the appellant is apparently withdrawing merely for the purpose of seeking a better position to renew the combat.

The original instruction numbered 8 took no account of the question whether deceased was retreating in order to renew the combat more advantageously; indeed, the testimony presents no such issue, and the instruction was therefore properly modified to conform to the issues presented by the testimony, and, as modified, it correctly declared the law.

Other instructions were asked which were refused, but it may be said that, in so far as the refused instructions correctly declared the law, they were covered by other instructions which were given.

The court permitted the introduction of certain photographs taken of the body of deceased after he had been killed, which showed the character and number of gunshot wounds on the body. The undisputed testimony showed that appellant shot the deceased with a shotgun, loaded with squirrel shot, and, as the shooting occurred at close range, many of the shot found lodgment in deceased's body.

In the case of *Sellers* v. *State,* 91 Ark. 175, the court, quoting from 1 Wigmore on Evidence, §§ 790-792, said that, "as a general rule, photographs are admissible in evidence when they are shown to have been accurately taken and to be correct representations of the subject in controversy, and are of such a nature as to throw light

upon it," and it was further said that "photographs are admissible as primary evidence upon the same grounds and for the same purposes as diagrams, maps and plats."

But it does not appear that there was any necessity for the introduction of the photographs in question, as there was nothing about the location or character of the wounds which was difficult to understand or which the photographs tended to elucidate. We think, however, there was no prejudicial error in admitting them in evidence, for they were shown to have been accurately taken and to have correctly indicated the number and location of the wounds. There was nothing about the photographs of a nature so gruesome as to inflame the passions of the jury, this being shown by the fact that appellant was convicted of the lowest degree of homicide. Besides, no proper objection appears to have been made to the introduction of the photographs.

It is finally insisted that the jury was kept together for such a length of time, and under such circumstances, after it had been announced to the court that they were unable to agree, as to coerce the verdict which was returned. We do not think this assignment of error is well taken. It is recited in the transcript that the case was given to the jury on the night of the 13th of January, and that "the jury retired to consider further of their verdict, and after awhile returned into court." The judge inquired if the jury had arrived at a verdict, and the foreman answered that "We are unable to reach a verdict, judge." Thereupon the court adjourned until the following morning, and upon reconvening the court gave to the jury the following instruction: "Gentlemen of the jury, I would not have any body on that jury to violate his conscience, but some jury must decide this case, and you are just as good men as there are in Bradley County. The majority ought to listen carefully to the minority to see if perchance they might not be right, and the minority ought to listen carefully to the majority to see if perchance they are not right. Now, gentlemen,

you have had a good night's sleep, and your minds are in better condition than they were last night when I sent you out, and I hope you will be able to return a verdict in a short time. You may retire now to consider of your verdict, under the charge of the sheriff.''

Later in the morning the jury again returned into court and reported that they had been unable to arrive at a verdict, whereupon the court further charged the jury as follows: ''I hate though, gentlemen, in a case of this gravity, I hate to discharge the jury without giving them every reasonable chance for them to agree. I have seen cases where the jury appeared to be hopelessly divided and yet, after awhile, they would come in and bring a verdict, and a verdict that seemed to satisfy them all. We have spoiled the day any way, and I feel like I ought to give you another opportunity, I just hate to discharge you until I have done that. I am going to say to you that I will excuse you until one o'clock, and then I will hold you a reasonable time this afternoon to see if you can't get together. Now, gentlemen, remember the admonition that I gave you when I first allowed you to separate; don't talk about this case to each other or suffer any one to speak of it in your presence or hearing. There is only one lawful way that you can discuss this case, and that is in your jury room and when you are all in there together; so, gentlemen, remember that, and return at one o'clock. I will excuse you now until one o'clock.'' The verdict was returned about 3 o'clock that afternoon.

We do not think there was anything in the language quoted which indicated any intention on the part of the court to keep the jury together until a verdict had been returned. In fact, we think the contrary appears. We have held that it is within the province of the trial judge to admonish the jurors as to their duty to make every reasonable effort to agree upon a verdict, and we think no abuse of the discretion of the court was shown in this respect. *Evans* v. *State*, 165 Ark. 424; *Benson* v. *State*,

149 Ark. 633; *Murchison* v. *State,* 153 Ark. 300; *Franklin* v. *State,* 153 Ark. 536; *Outler* v. *State,* 154 Ark. 598.

Upon a consideration of the whole case we find no prejudicial error, and the judgment of the court below is affirmed.