PAYNE v. STATE.

Opinion delivered May 28, 1928.

*Smith & Blackford,* for appellant.

*H. W. Applegate,* Attorney General, *John L. Carter,* Assistant, and *Penix & Barrett,* special counsel, for appellee.

SMITH, J. This appeal is from a judgment sentencing appellant to the penitentiary for the term of his natural life for the alleged killing of Fred Brandon. Only two assignments of error are argued for the reversal of the judgment, the first being that a child was erroneously permitted to testify on behalf of the State, and the second, that the court erred in refusing to give instruction number 2, requested by appellant.

No witness testified that he saw the killing, and the State relied entirely upon circumstantial evidence to secure the conviction. Two small boys, one Levi Phillips, who was seven years old, and another, Roy Pearson, whose age was eleven, gave testimony which supplied an essential link in the chain of circumstances.

The defendant denied the killing, and undertook to prove an alibi, and offered testimony to the effect that he was far removed from the scene of the killing at the time it was shown to have occurred. According to the testimony of the boys above named, appellant was in deceased's field, with a gun and dogs, hunting, a few minutes before the shots, three in number, were fired by an automatic shotgun, which killed the deceased.

No preliminary questions touching the competency of Roy Pearson were asked that witness, but, when Levi Phillips was called, he was first interrogated by the prosecuting attorney as follows:

"Q. Tell these men your name? A. Levi Phillips. Q. How old are you? A. Seven years old. Q. When was your birthday? A. On Thursday, I think. I can't tell you just when it was, but it was on Thursday. Q. Is it

wrong to tell a story? A. Yes sir. Q. What becomes of boys that tell stories? A. They lock them up. Q. If you are good and die, where do you go? A. Go to heaven. Q. Do you know Sam Payne here? Objection by the defendant."

Counsel for appellant then asked the witness the following questions:

"Q. Do you know what the punishment is, son, for telling a lie in court—you don't know that, do you? A. (No answer). Q. Then you don't know what the penalty for perjury is, do you? A. (No answer)."

Counsel for appellant, after propounding these questions, to which no answer was given, objected to the witness testifying, and saved an exception when his objection was overruled.

After the court had ruled that the witness was competent to testify, the witness told about seeing appellant in the deceased's field with dogs and gun, and was then subjected to a lengthy cross-examination by counsel for appellant. The answers of the witness indicated that the boy possessed at least average intelligence for a youth of his age. His answers were responsive to the questions asked him, and showed that he understood all these questions.

It is earnestly insisted that, under the rule announced in the case of *Crosby* v. *State,* 93 Ark. 156, 124 S. W. 781, the witness was not qualified to testify. In the Crosby case, a colored boy named Will Howard, ten years old, was permitted to testify, over the objection of the defendant. In that case, as in this, the witness stated that he knew it would be wrong not to tell the truth, but the colored boy answered that he did not know what would be done with him if he did not do so, while the witness Levi Phillips answered that he would be locked up if he told a story. The witness Will Howard was held to be incompetent, and the admission of his testimony was error calling for the reversal of the judgment. In each case the witness knew it was wrong to tell a story, but the witness Will Howard did not know that any punish-

ment would attend if he did so, while the witness in the instant case not only knew it was wrong to tell a story, but that persons were punished who did so.

It is true, as counsel for appellant argue, that the witness made no answer to either of the questions asked him on his cross-examination. But we think the ability to correctly answer these questions was not the true test of competency. Many persons of sufficient intelligence to fully comprehend the obligation of an oath might be unable to answer what the punishment was for telling a lie in court, and who would not know what the penalty for perjury is.

In determining the competency of a witness testifying in a criminal case, we follow the common law on that subject, as announced in the case of *Flanagin* v. *State*, 25 Ark. 92, where it was said:

"As to children, there is no precise age within which they are absolutely excluded, on the presumption that they have not sufficient understanding. At the age of fourteen all persons are presumed to have common discretion and understanding, until the contrary appears, but under that age it is not presumed; hence inquiry should be made as to the degree of understanding which the child offered as a witness possesses; and if he appears to have sufficient natural intelligence, and to have been so instructed as to comprehend the nature and effect of an oath, he should be admitted to testify, no matter what his age may be."

The common law on the subject of the competency of witnesses in civil cases was changed by the Civil Code, § 663 of which (§ 4146, C. & M. Digest) provides that "infants under the age of ten years, and over that age if incapable of understanding the obligation of an oath," shall be incompetent to testify in civil cases, but the common law on the subject of the competency of witnesses in criminal cases was not changed by this statute, and remains as it was announced to be in the Flanagin case, *supra.*

In the case of *Wheeler* v. *United States,* 159 U. S. 523, Mr. Justice Brewer, speaking for the Supreme Court of the United States, said:

"That the boy was not, by reason of his youth, as a matter of law, absolutely disqualified as a witness, is clear. While no one would think of calling as a witness an infant only two or three years old, there is no precise age which determines the question of competency. This depends on the capacity and intelligence of the child, his appreciation of the difference between truth and falsehood, as well as of his duty to tell the former. The decision of this question rests primarily with the trial judge, who sees the proposed witness, notices his manner, his apparent possession or lack of intelligence, and may resort to any examination which will tend to disclose his capacity and intelligence as well as his understanding of the obligations of an oath. As many of these matters cannot be photographed into the record, the decision of the trial judge will not be disturbed on review, unless from that which is preserved it is clear that it was erroneous. These rules have been settled by many decisions, and there seems to be no dissent among the recent authorities."

It is, of course, the duty of the trial court to follow closely the examination of a witness about whose competency there is a serious question on account of his youth, and if, during the course of the examination, it appears that the witness does not appreciate the questions asked him and the relevancy of the answers given, because of his youth, it would be the duty of the trial court to exclude the entire testimony of the witness, although his preliminary examination apparently indicated that the witness understood the obligations of an oath; but, as was said by Mr. Justice Brewer in the case above cited, the decision of this question rests primarily with the trial judge.

Under the test stated we think no abuse of discretion was shown in the admission of the testimony of the witness Levi Phillips, as his entire examination showed an

intelligent appreciation of the facts in regard to which the witness was interrogated, as well as the obligation to tell the truth in regard thereto.

The court refused to give instruction number 2, requested by appellant, which reads as follows: "Before the jury would be authorized to find the defendant guilty upon circumstantial evidence alone, the circumstances in proof must be so connected and linked together as to make an unbroken chain, and sufficient to exclude every other reasonable hypothesis for the commission of the offense except by the defendant."

We think this instruction was objectionable because it is argumentative in form. The trial court might very well, in a case where the guilt of the accused depends entirely upon circumstantial evidence, tell the jury that the circumstances proved should be such that, if true, they excluded every reasonable hypothesis except that of guilt. But it has been several times held that the failure to do so is not error where the court has, in other instructions, fully charged the jury on the presumption of innocence which attends one charged with the commission of a crime and the necessity of showing the guilt of the accused beyond a reasonable doubt.

This exact question was recently very thoroughly considered by us in the case of *Adams* v. *State,* 176 Ark. 916, 5 S. W. (2d.) 946, where it was said:

"Even if it could be said that this were a case depending wholly upon circumstantial evidence, nevertheless the court did not err in refusing to grant appellant's prayers for instructions Nos. 18 and 19, because the court had already fully and correctly instructed the jury on the credibility of witnesses, the weight of evidence, the presumption of innocence, and reasonable doubt. In *Barton* v. *State,* 175 Ark. 120, 298 S. W. 867, we said, referring to the refusal of the trial court to give a similar instruction: 'We have held, however, that it is not improper to refuse to give such an instruction, even in cases where conviction was asked wholly upon circumstantial evidence, where the jury was

properly instructed as to the burden of proof resting on the State to establish the guilt of the accused beyond a reasonable doubt, and where reasonable doubt was properly defined. *Rogers* v. *State,* 163 Ark. 252, 260 S. W. 23; *Bost* v. *State,* 140 Ark. 254, 215 S. W. 615; *Cooper* v. *State,* 145 Ark. 403, 264 S. W. 726; *Cummins* v. *State,* 163 Ark. 24, 258 S. W. 628; *Barker* v. *State,* 135 Ark. 404, 205 S. W. 835; *Garrett* v. *State,* 171 Ark. 297, 284 S. W. 734; *Rogers* v. *State,* 163 Ark. 252, 260 S. W. 23.' The above correctly declares the law, and it is not in conflict with any of our previous decisions.''

In this case the court fully charged the jury on the subject of the credibility of witnesses and the manner of weighing their testimony, and the presumption of innocence attending the defendant, and the necessity on the part of the State of proving the guilt of the accused beyond a reasonable doubt before convicting him, and we conclude therefore that there was no error in refusing defendant's instruction number 2.

As no error appears in the record, the judgment must be affirmed, and it is so ordered.