CLEMMONS *v.* BYARS.

4-5291                                    122 S. W. 2d 652

Opinion delivered December 12, 1938.

H. G. Wade, for appellant.

G. R. Haynie, for appellee.

HUMPHREYS, J. This is an appeal by H. G. Wade from a decree of the chancery court of Ouachita county in which judgment was rendered in favor of B. J. Byars for $295.21 against him, G. S. Clemmons and Monroe Clemmons for the value of four bales of cotton and 85 bushels of corn which they sold and appropriated to their own use while under attachment in a proceeding in the court of D. O. Atterberry, justice of the peace in Calhoun county, to enforce a landlord's lien of B. J. Byars for rent and advances made by him to his tenants, G. S. Clemmons and Monroe Clemmons, on land which they had rented from him in Calhoun county for the year 1935.

The sheriff of Calhoun county and his bondsmen were made parties defendant and judgment was prayed against them on account of the sheriff's negligence in permitting the tenants to retain possession of the property and convert it with the aid of H. G. Wade to their

own use after the writ of attachment was levied on said cotton and corn.

On motion, the service was quashed as to the sheriff and his bondsmen and the suit was not prosecuted as to them any further.

G. S. Clemmons and Monroe Clemmons filed a motion to quash the service upon them which was overruled over their objection and exception, but they have not appealed from the decree rendered against them, hence, it is unnecessary to pass upon the action of the trial court in overruling the motion or in rendering judgment against them.

H. G. Wade filed a demurrer to the complaint of Byars which was overruled over his objection and exception. The case was then transferred to the chancery court, to which transfer H. G. Wade objected and excepted.

After the case was transferred to the chancery court H. G. Wade made a motion to remand it to the circuit court, which motion was overruled over his objection and exception.

H. G. Wade then renewed his demurrer to the complaint, which was overruled over his objection and exception and then filed a separate answer denying any liability on account of converting the property to his own use while same was in *costodia legis,* specifically pleading that he did not wrongfully assist the Clemmonses in the conversion of the property, but that he received and sold one bale thereof under an order of Henry Means, conciliation commissioner in Ouachita county in the United States District Court for the Western Division of Arkansas. He also pleaded the six months' statute of limitations contained in the landlord's lien act as a bar to the prosecution of this action. Pope's Dig., § 8845.

G. S. Clemmons and Monroe Clemmons filed a separate answer, the contents of which is unnecessary to set out as they have not appealed from the judgment rendered by the court against them.

The cause then proceeded to a hearing which resulted in a joint and several judgment being rendered

against the Clemmonses and H. G. Wade for the total amount sued for, from which H. G. Wade has appealed.

We have read the evidence carefully and according to our interpretation thereof it is, in substance, as follows:

The land upon which the crop was raised by the Clemmonses as tenants of B. J. Byars in 1935 had been conveyed by G. S. Clemmons and his wife to F. F. Neeley in satisfaction of a mortgage thereon and, in 1933, F. F. Neeley conveyed same to B. J. Byars, who rented it to the Clemmonses in 1935 for a rental of one-third of the corn and one-fourth of the cotton and advanced to them, as landlord, supplies to make the crop. They raised 85 bushels of corn and four bales of cotton and were indebted to Byars when the judgment was rendered in the instant suit in the sum of $295.21 on account of rent due him and supplies furnished by him. The Clemmonses having failed to pay him the rent or the amount due for supplies, he proceeded within six months, or in the fall of 1935, to enforce his landlord's lien for the rents and supplies, and the property was levied upon by the sheriff who left it in the care of the Clemmonses.

G. S. Clemmons, with the aid of H. G. Wade, then filed a petition in bankruptcy before Henry Means under the Frazier-Lemke Act seeking to have the deed to Byars declared a mortgage and invoking the aid of the conciliation commissioner in adjusting same so that he might liquidate it in the course of time. A schedule of his property was filed with the bankruptcy petition, including the property on which Byars held a landlord's lien and which he was attempting to enforce before a justice of the peace in Calhoun county. The conciliation commissioner seems to have made an order authorizing the Clemmonses to sell the cotton and corn which was under attachment, and this order was made at a time when Henry Means was not in condition to hold court. He set this order aside and released the cotton and corn, but immediately G. S. Clemmons filed another schedule of property before the conciliation commissioner and, without notice to Byars, he issued another order authorizing the Clemmonses to sell the property. This order was afterwards set aside by the federal judge on the ground that the proceeding before the conciliation commissioner was not a good faith

proceeding and was not filed in order to get aid in the settlement of the mortgage, but was filed for the purpose of destroying the landlord's lien upon the property.

In a suit in the chancery court that followed, the deed from Neeley to Byars was declared an absolute deed and not a mortgage and that Byars was the owner in fee of the land after he received his deed in 1933. The record also reflects that as soon as the Clemmonses got an order from the conciliation commissioner to sell the cotton they telephoned to H. G. Wade, who had been assisting them, perhaps in the first petition before the conciliation commissioner, and certainly in the second petition filed before the conciliation commissioner, that such an order had been issued and Wade directed them to bring the cotton in, and with their consent took one bale of cotton for his services and assisted the Clemmonses through the service of the stenographer of a Mr. Bowers who was acting for Wade to sell the other three bales and when the order was issued by the conciliation commissioner allowing the Clemmonses and their attorney to dispose of the cotton the Clemmonses proceeded to use the corn. Byars prosecuted his attachment suit to enforce his landlord's lien, but it was an empty victory because while the suit was pending and the property was in *custodia legis* it had been appropriated by the Clemmonses and Wade and his landlord's lien was destroyed in that way. They sold the property and used the proceeds. The purpose of the Frazier-Lemke bankruptcy act was to aid and protect home owners against the loss of their homes and its purpose was not to protect tenants in their effort to cheat their landlords in the collection of their rent and supply bills. In fact, the act does not give the conciliation commissioner any authority to adjudicate or determine the existence or non-existence of landlord's liens and the legal rights of parties connected with the litigation. Its only purpose was to grant power to the federal courts to postpone the foreclosure of mortgages in order to give debtors reasonable time to protect themselves against the loss of their home. The order issued by the conciliation commissioner allowing the Clemmonses and Wade to sell the cotton was beyond the

jurisdiction of the conciliation commissioner and was void. He had no right to issue such an order and the petition itself was afterwards dismissed by the federal judge. The petition was just a subterfuge, as we read the record, to destroy Byars' landlord's lien and the enforcement thereof by attachment proceedings.

In order to escape liability, Wade testified that he had nothing to do with the first petition and that he participated in the second petition to the extent of representing the Clemmonses as an attorney and he also testified that he knew nothing of the pendency of Byars' suit by attachment to enforce his landlord's lien, but the evidence as a whole convinces us that he assisted the Clemmonses in selling three bales of cotton and in appropriating one bale to his own use, and under the void proceedings he assisted them in making it possible for them to use the corn.

It would extend this opinion to great length to set out the whole testimony, so on this trial *de novo* we have contented ourselves, after a very careful reading thereof, with setting out our interpretation thereof.

Appellant contends that the trial court erred in not remanding the cause to the circuit court, arguing that the circuit court, and not the chancery court, had jurisdiction of the cause of action. This court said in the case of *Reavis* v. *Barnes,* 36 Ark. 575, that (quoting syllabus): "A landlord cannot maintain an action for money had and received to his use, against one who has purchased and sold his tenant's crop with knowledge that his rent was due and unpaid. His remedy, if any, is by specific attachment while the crop is in the purchaser's hands, or by bill in equity after the sale, to have the proceeds appropriated to payment of his rents."

This doctrine was approved in the case of *Manilla Supply Co.* v. *Tiger Bros.,* 126 Ark. 105, 189 S. W. 675. The circuit court did not err in transferring the cause to equity nor did the chancery court err in refusing to remand the cause to the circuit court.

Appellant contends that his demurrer to the complaint should have been sustained because the allegations thereof were insufficient to state a cause of action.

We think the court correctly overruled the demurrer because the complaint states that during the pendency of the landlord's attachment suit to enforce his landlord's lien for rent and supplies the tenants by and with the aid of H. G. Wade took the property out of the custody of the court and unlawfully converted same to their own use. Such a cause of action is cognizable in a court of equity according to the cases cited above.

Appellant contends that an action of this character is barred under the landlord's statute unless the landlord has proceeded within six months to enforce his lien. The landlord did proceed within six months to enforce his lien and was prevented from getting the property under his attachment because while his suit was pending appellant and his tenants unlawfully took charge of the property or took it out of the custody of the court and converted same to their own use. Under those circumstances we ruled in the case of *Bank of Gillett* v. *Botts,* 157 Ark. 478, 248 S. W. 573, that the six months' statute of limitations was inapplicable and did not apply where a mortgagee wrongfully took the property and converted same to his own use. This case was alluded to and cited in the case of *Bottrell* v. *Farmer's Bank & Trust Co.,* 172 Ark. 1165, 291 S. W. 832, but this court in the Bottrell Case differentiated it from the case of *Bank of Gillett* v. *Botts* in the following language: "Appellant calls attention to the case of the *Bank of Gillett* v. *Botts,* 157 Ark. 479, 248 S. W. 573, but in that case it will be observed that the suit was brought by the landlord against the tenant and some laborers who were claiming laborer's liens on the rice crops. The purpose of this suit which was brought within six months, was to establish a lien for rent and supplies. After the suit was begun to enforce the lien, a receiver was appointed by the chancery court. The bank in that case took charge of the property and sold it, after the suit was begun to enforce the lien, and the court simply held that in that case the six months' statute had no application. It had no application because the suit to enforce the landlord's lien for rent and supplies was properly begun within six months, and the bank, after

the expiration of six months, took possession of the property and sold it while the suit was pending.''

The instant case is ruled by the case of *Bank of Gillett* v. *Botts,* and under the facts in this case the six months' statute of limitations is not applicable. In the Bottrell Case, *supra,* relied upon by appellant, no action had been brought during the six months' period to enforce the landlord's lien, whereas, in the instant case, such a suit had been brought, and the landlord's lien was in effect destroyed by the action of appellants and the Clemmonses.

No error appearing, the judgment is affirmed.