GRISHAM BUTANE GAS COMPANY *v.* MASON.

5-653      278 S. W. 2d 102

Opinion delivered April 11, 1955.

[Rehearing denied May 16, 1955.]

*Grubbs & Grubbs,* for appellant.

*W. H. Drew,* for appellee.

J. Seaborn Holt, J. During the crop year of 1953, Thomas B. Mason and E. T. Mason, his father, made a crop of rice, jointly, on the farm belonging to J. L. Hays. They had made a rice crop on this same land in 1952. They agreed to pay Hays, their landlord, one-fourth of all rice produced. The present litigation was begun by appellant, Grisham Butane Gas Co., suing Thomas B. Mason on account for $1,209.11 for gas used, and Arkansas Rice Grower's Cooperative Association, Delta Production Credit Association and Poinsett Production Credit Association were made garnishees. $1,707.97 derived from the 1953 crop grown by the Masons on Hays' land was paid into the registry of the court, as a result of these garnishments. March 1, 1954, before these funds were paid into court, J. L. Hays intervened in the suit and claimed a landlord's lien against the above fund for $300.00 that he had, in effect, advanced to Thomas B. Mason to produce the crop. A jury having been waived, the trial court held in favor of Hays. The judgment contained this recital:

"As I understand the pleadings and facts in this case, Grisham Butane Gas Company garnished funds in the hands of the Arkansas Rice Grower's Cooperative Association belonging to Thomas Mason, further known as T. B. Mason and J. L. Hays filed an intervention claiming that he was the landlord, owning the lands on which the rice was grown in 1953, and that he had a prior landlord's lien by reason of the fact that he had endorsed the note to the Bank of Lake Village for Thomas or T. B. Mason, and the evidence discloses that one E. T. Mason executed the note and received the money from the Bank upon the endorsement of the landlord, Mr. Hays, and that E. T. Mason failed to pay the note and the landlord discharged the same. It is further found by the Court under undisputed evidence that E. T. Mason and Thomas B. Mason were tenants growing rice upon Mr. Hays' farm and that a note was endorsed for the purpose of his tenants obtaining $300.00 to repair a combine, but Mr. Hays' evidence fails to disclose whether or not the money was spent for that purpose but at least the money was

advanced by the landlord to his tenant for the purpose of completing said crop. It is therefore held by the Court that Mr. Hays has a landlord's lien in the sum of $300.00 against the funds which is superior to other claims, and judgment will be drawn accordingly.''

For reversal, appellant contends, in effect, that there was no substantial evidence to support the findings and judgment of the court, and in any event ''it was error for the court to allow interest before judgment on the amount found owing and then only 6% could have been allowed.''

After a review of the testimony, in the light most favorable to appellees, as we must, we have concluded that there was substantial evidence to support the findings and judgment and therefore, under our long established rule, we must affirm on this issue.

The record reflects that in order to produce the crop in question for 1953, Thomas B. Mason executed crop mortgages to obtain some of the funds with which to grow the crop and all the rice grown on the land was placed in the name of Thomas B. Mason with the Arkansas Rice Grower's Cooperative Association. E. T. Mason was the father of Thomas B. Mason and, as indicated, they produced this crop jointly. Hays (the landlord) furnished the Masons $300.00 to repair a combine used by them in producing the rice crop. This money was procured by the Masons in this manner: The Bank of Lake Village loaned E. T. Mason $300.00, evidenced by a note signed by him and endorsed by Mr. Hays. E. T. Mason failed to pay the note and it was paid to the bank by Mr. Hays. The Masons (jointly) used this $300.00, as indicated, to assist them in making the rice crop.

Mr. Hays testified: ''Mr. Hays, were you the landlord of Thomas Mason, the defendant herein, during the year 1953? A. I was. Q. He made a rice crop on your farm? A. Yes, sir. Q. During the year 1953 did you furnish him with any supplies to make this crop with? A. I did. Q. What did you furnish to Mr. Thomas Mason? A. I furnished him $300.00. Q. What was this $300.00 for? A. To repair his combine. . . .

You went on a note for this—whose note did you endorse? A. E. T. Mason, Thomas Mason, the old gentleman, I don't know what his initials are, Thomas. Q. Both Thomas Mason, Jr., and Thomas Mason, Sr., farmed on your farm? A. Yes, sir. . . . When you furnished them this money you became surety on a note to E. T. Mason? A. Yes, sir. Q. And this money that was gotten out of this went to Thomas Mason to repair this combine? A. Yes, sir. Q. Did Thomas Mason repay this note? A. No, sir. Q. Do you know that he repaired the combine with this money? A. Yes, sir. . . . Did they both make a crop together? A. They did. Q. The same crop? A. Same crop, with all their tools together and crop together and both got their name on that Delta loan and I signed a release for it and they were both there when I let them have the money, but E. T. Mason was the one that signed it then. . . . Who was with you when you signed this note? A. They were both there. I supposed they both signed it. They came up and said they needed some money. They suggested they go to the Delta, John Baxter. I said, 'Just go down to the bank and get it,' and I didn't have the money and my account was short. . . . Did T. B. Mason make a crop separately from E. T. Mason? A. He did not. They were both together and they didn't have any land whatever except mine.''

Mr. Cashion, vice president of the bank, testified: ''In the course of business do you recall whether or not a loan was made to a Mr. Mason with Mr. J. L. Hays as security on or about August 15, 1953? A. I have the transcript of the record. It was on August 15, 1953, we loaned E. T. Mason $300.00. The note was endorsed by Mr. J. L. Hays. . . . Back on August 15 when you disbursed the funds do you recall whether both Masons were present when you disbursed the funds? A. That is my recollection, that they were both present.''

Under the provisions of § 51-203, Ark. Stats. 1947, Hays was entitled to a prior landlord's lien for the $300.00 so advanced and used in producing the crop. This section provides: ''. . . if any landlord, to en-

able his tenant or employee to make and gather the crop shall advance such tenant or employee any necessary supplies, either of money, provisions, clothing, stock, or other necessary articles; such landlord shall have a lien upon the crop raised upon the premises for the value of such advances, which lien shall have preference over any mortgage or other conveyance of such crop made by such tenant or employee.''

This is not a suit on the note. The note was but evidence of the advance of $300.00 by Hays, and even without the note, there is evidence that this $300.00 was advanced for the purpose of repairing the rice combine and falls within the rule announced in *Bank of Gillett* v. *Botts,* 157 Ark. 478, 248 S. W. 573, wherein the landlord, to enable his tenant to secure rice sacks, endorsed his tenant's note as surety. Just as here, the tenant failed to pay the note and the landlord was forced to pay, and we there held: (Headnote 1) ''A landlord who signed a note for his tenant to procure bags to preserve the rice crop, being primarily liable on such note, though signing as surety, upon paying such note was entitled to a lien for supplies furnished.''

Appellant is correct in his contention, above, that there was error in the interest allowance of 8%. As indicated, the $300.00 note was but evidence of Hays' advance of this amount to the Masons. It was never introduced as evidence and there was nothing to show that interest rate, if any, was embodied in the note. In the absence of a contract to pay interest, no rate larger than 6% may be demanded, (*Temple* v. *Hamilton,* 178 Ark. 355, 11 S. W. 2d 465). So, Hays is entitled to 6% only from the date of the judgment.

As so modified, the judgment is affirmed.