## YOTHER v. STATE.

Opinion delivered February 23, 1925.

1. CRIMINAL LAW—COMPETENCY OF INFANT WITNESS—DISCRETION OF COURT.—The competency of a witness under 14 years of age is addressed to the legal discretion of the trial judge, and his ruling thereon is not reviewable, in the absence of a clear abuse of such discretion.

2. WITNESSES—COMPETENCY OF INFANT.—It was not an abuse of discretion to permit a ten-year-old girl to testify where, on a comprehensive examination, it was fairly inferable that she fully comprehended the sanctity of obligation of an oath.

3. CRIMINAL LAW—TESTIMONY OF INFANT WITNESS—INSTRUCTION.— An instruction relating to the testimony of a ten-year-old witness which told the jury to test her evidence by the same rules applied to the testimony of other witnesses was not reversible error where the instruction also told the jury to consider her tender years, childish nature and environment.

Appeal from Johnson Circuit Court, *J. T. Bullock,* Judge affirmed.

*Paul McKennon,* for appellant.

*H. W. Applegate,* Attorney General, and *John L. Carter* assistant for appellee.

HART, J. Wilson Yother was convicted before a jury for murder in the second degree, and his punishment fixed at seven years in the State Penitentiary. The case is here on appeal.

The first assignment of error is that the court erred in permitting Beatrice Evans to testify in the case.

Wilson Yother was charged with having killed Joe Holmes by cutting him with a knife, one night in May, 1924. The case was tried on the 23rd of October, 1924. Beatrice Evans was ten years old at the time of the trial, and had testified before the grand jury, which returned the indictment, and was examined before the circuit judge on the application of the defendant for bail. Objection was made to her testifying as a witness, and we copy from her examination on this point the following:

"Q. How old are you, Beatrice? A. Ten. Q. Ten years old? A. Yes sir. Q. Were you a witness before the judge here one time about this matter? A. Yes sir. Q. You know what it is to swear—to hold up your hand and say you will swear the truth? A. Yes sir. Q. You know what will happen to you if you don't? A. Yes sir."

She then testified that both of her parents were dead, and that she had lived with Joe Holmes and his wife for four months before Joe Holmes was killed. We again quote from her testimony the following:

"BY COURT: Q. Beatrice, tell me—you were sworn here, were you? A. Sir? Q. Were you sworn here with the other witnesses? Did you hold up your hand and say that you would tell the truth, the whole truth, and nothing but the truth? A. Yes sir. Q. Well, now, suppose you tell a falsehood after you have taken that oath, what will happen to you? A. Put me in the reform school. Q. Put you in the reform school? A. Yes sir. Anything else that would happen to you that you know of? A. No sir. Q. What becomes of

people that swear falsely? A. Put them in the penitentiary. Q. Do you know what becomes of them when they die? A. No sir. Q. You don't know that? A. No sir.''

At the conclusion of her examination, the court permitted her to testify, over the objections of the defendant. She testified that she was present when the killing occurred, and was examined and cross-examined at great length. She stated in detail the circumstances attending the killing, and did so in a connected and intelligent manner. Being under fourteen years of age, the question of her competency as a witness was left to the legal discretion of the trial judge, and, in the absence of a clear abuse, the judicial discretion is not reviewable upon appeal. *Crosby* v. *State,* 93 Ark. 156.

According to the rule laid down in that case, an infant under fourteen years of age must not only have intelligence enough to understand what he is testifying about, but he must also have a due sense of the sanctity of an oath. In that case we held that the infant was not competent as a witness, because the examination was not sufficiently comprehensive. The boy stated that it was wrong not to tell the truth, but that he did not know what would be done to him if he did not tell the truth. He was not asked, and did not state, anything from which it could be inferred that he comprehended the danger of swearing falsely or appreciated the sanctity of an oath.

In the case before us the facts are essentially different. The examination of the witness was much more comprehensive. She first stated that she knew what would happen to her if she did not swear the truth. On further examination she stated that, if she did not tell the truth, she would be put in the reform school, and that people generally who swore falsely were put in the penitentiary. She did say that she did not know what became of such people when they died. But this is far from showing that she did not appreciate the sanctity of an oath. Her whole examination, taken together,

shows that she knew that she would be punished. It was fairly inferable that she fully comprehended the sanctity and obligations of an oath. Therefore there was no abuse of discretion in the circuit court allowing her to testify as a witness in the case.

It is insisted that the court erred in giving instruction No. 4, which reads as follows:

"The court tells you to weigh the testimony of the witness that appeared to be a child of tender years, and you take the tender years and childish nature into consideration, together with the environment about the child and the probability or the improbability of its testimony having been influenced by any other person, and give to that testimony just such weight as you think it is entitled to have. Test it by the same rules that you do the testimony of other witnesses."

It is true that the last sentence tells the jury to test the evidence given by the infant by the same rules as that of other witnesses; but, when the instruction is read as a whole, it left it to the jury to take into consideration the tender age, experience and environment of the child. Therefore the instruction was not inherently wrong, and no reversible error was committed in giving it.

No other assignments of error are relied upon for a reversal of the judgment, and it follows that the judgment will be affirmed.