Harris *v.* State.

5120                                                284 S. W. 2d 477

Opinion delivered December 7, 1964.

*Bon McCourtney & Associates,* By: *II. M. Ellis* and *Claude B. Brinton,* for appellant.

*Bruce Bennett,* Attorney General, By: *Richard B. Adkisson,* Assistant Attorney General, for appellee.

Frank Holt, Associate Justice. On the night of December 20, 1963, the home of Leonard Dever was destroyed by fire. The bodies of Leonard Dever, his wife, and four

of their children were found in the ruins. Two other children escaped. The appellant, Frank Harris, was subsequently convicted and sentenced to life imprisonment for the murder of Leonard Dever. That case is not before us. In the case at bar the appellant was charged by an information with the joint crimes of the murders of Mrs. Martha Dever and her four children, Nelle, Joanne, Sharon and Janette Dever, while in the perpetration of or the attempt to perpetrate arson and/or robbery. A jury found the appellant guilty of murder in the first degree and fixed his punishment at death in each of the five cases. From these judgments the appellant brings this appeal.

For reversal appellant urges several points; and we have also considered every objection made at the trial as we do in capital cases. Ark. Stat. Ann. § 43-2723 (Repl. 1964) and *Hays* v. *State,* 230 Ark. 731, 324 S.W. 2d 520. The point that gives us most serious concern is the admissibility of the testimony of six-year-old Mary Dever. We are of the view that prejudicial error was committed in holding, over the objections of the appellant, that her testimony was competent.

It is the appellant's theory of the case that when he went to the Dever home to purchase whiskey an altercation ensued between him and Dever; that as a result, Dever struck the defendant, shot Mrs. Dever, set fire to their house, shot at appellant as he escaped and then Dever killed himself. According to the State's theory, the appellant, armed with a twenty-gauge shotgun, went to the Dever home, where he was known, for the purpose of robbing Dever who was reported to carry large sums of money; that appellant shot and robbed Dever, shot Mrs. Dever, and then set fire to the house resulting in the death of the four children other than Ronald and Mary Dever who escaped. The State presented both Mary and Ronald as witnesses to corroborate its case.

At common law and by statute in our State a child below ten years of age is never a competent witness in a civil action. Ark. Stat. Ann. § 28-601 (Repl. 1962). However, this is not the rule in criminal cases. We have held

many times that in criminal cases there is *no precise age* at which a child is, or is not, competent to testify and, further, that the trial court is given wide discretion in making the determination of competency and also in the absence of clear abuse, such judicial discretion is not disturbed upon appeal. *Needham* v. *State,* 215 Ark. 935, 224 S.W. 2d 785; *Ramick* v. *State,* 212 Ark. 700, 208 S.W. 2d 3; *Guthrie* v. *State,* 188 Ark. 1081, 70 S.W. 2d 39; *Hudson* v. *State,* 207 Ark. 18, 179 S.W. 2d 165; *Yother* v. *State,* 167 Ark. 492, 268 S.W. 861; 8 Ark. Law Rev. 100.

Although we have recognized no age limitation in criminal cases, we have consistently held that in order for a child-witness to be competent the child must meet certain qualifications. In *Batchelor* v. *State,* 217 Ark. 340, 230 S.W. 2d 23, we repeated these requirements saying:

"* * * if the child-witness, when offered, has capacity to understand the solemnity of an oath and to comprehend the obligation it imposes, and if in the exercise of a sound discretion the trial court determines that at the time the transaction under investigation occurred the proposed witness was able to receive accurate impressions and to retain them to such an extent that when testifying the capacity existed to transmit to fact-finders a reasonable statement of what was seen, felt or heard,— then, on appeal, the Court's action in holding the witness to be qualified will not be reversed."

See, also, 58 Am. Jur., Witnesses, § 129 and 97 C.J.S., Witnesses, § 63b.

With this well settled rule in mind, we review some of the pertinent portions of Mary Dever's testimony. When asked her age, she held up six fingers. She stated God would punish her if she didn't tell the truth. She testified that all she knew about God or the Bible was what someone had recently told her; that she had never been to church and she had never been taught about God by anyone before this time. In support of the State's theory she related that appellant shot Dever, then

required Mrs. Dever to remove a billfold from his body and hand it to him.

She also testified on direct examination by the State:

"Q. What did Frank [appellant] say?

A. Frank said 'I am going to shoot you.'

Q. Did he shoot your mama?

A. (Witness nodded in the affirmative)

Q. Before Frank shot your mama, did he ask your mama for anything?

A. (Witness shook her head in the negative)

Q. After he shot your mama, you say he got some matches?

A. (Witnesses nodded in the affirmative)

Q. Did he get anything else besides the matches?

A. Fuel.

\* \* \*

Q. What did he do with theh fuel after he got it?

"A. Burned up the house."

On cross-examination by appellant she testified:

"Q. What was your Mama pointing the gun at your Daddy for?

A. She said, 'if you don't stop that talk, I am going to shoot your head off.'

\* \* \*

Q. When your mama drew the gun on your daddy and told him to quit cursing, didn't your daddy knock your mama over on the bed?

A. Yes.

Q. And that is when your daddy shot your mama before she fell on the bed?

A. Yes.''

On redirect examination by the State the child-witness repeated practically what she had related on direct examination.

Then on recross-examination, in support of appellant's theory of the case, she again contradicted what she had said on direct and redirect examination. For instance, she testified in part as follows:

''Q. Mary, you remember testifying a while ago that your daddy knocked your mama over on the bed and shot her after she threatened to blow his head off? That is true, isn't it?

A. (Witness nodded in the affirmative)

Q. But Uncle Burke [brother of Leonard Dever] didn't tell you to say that?

A. No.

Q. But Uncle Burke did tell you to say Frank shot your daddy and your daddy was laying on the floor?

A. Yes.

Q. Uncle Burke didn't tell you to tell your daddy run Frank out of the house and shot at Frank outside, did he?

A. No.

Q. And that is the truth, isn't it?

A. Yes.

Q. But Uncle Burke did tell you to tell Frank poured fuel oil on the floor and on the bed?

A. Yes.

Q. Uncle Burke told you to swear to that?

A. Yes.

Q. After your daddy shot your mother and you testified Frank ran out, your daddy ran after him, your daddy came back but Frank didn't come back any more?

A. No.

Q. Didn't you see your daddy pouring fuel oil after Frank left?

A. Yes."

She also stated that her father had poured fuel oil on the bed and floor, and in answer to the query, "Where else did he put it?", she answered, "On the windows".

Thus there were not merely inconsistencies but irreconcilable conflicts in her testimony bearing on the essential elements of the alleged crimes. We cannot approve such contradictory versions on these vital issues. We are of the view that this child either did not receive accurate impressions of the events transpiring that tragic evening, or if she did, she did not have the capacity or intelligence to retain the impressions to the required extent so as to transmit to the jurors in a reasonable, clear, and coherent manner what she saw, heard, and felt.

In Mary's testimony there are other examples of her inability to recollect. For example:

"Q. When your house burned down, do you remember that?

A. (Witness shook her head in the negative)

*   *   *

Q. Do you remember when there was a fire at your house?

A. (Witness shook her head in the negative)

*   *   * [The house had burned six months previously]

Q. Were you here at the courthouse yesterday?

A. (Witness nodded in the affirmative)
Q. Where were you at the courthouse yesterday?

A. I wasn't here.

Q. Where were you yesterday? (question repeated)

A. I forgot.

Q. Huh?

A. I forgot.

Q. You forgot where you were yesterday.

A. (Witness nodded in the affirmative)

\* \* \*

Q. What school do you go to? Do you remember when you started to school?

A. (Witness shook head in the negative)

Q. Do you know where you are going to school?

A. My brother does.

Q. But do you know where you are going to school?

A. (Witness shook head in the negative)."

In *State* v. *Ranger,* 98 A. 2d 652, the Maine Supreme Court held inadmissible the testimony of children ages ten and eight saying:

"\* \* \* The proposed child witness should know the difference between truth and falsehood, and apparently must be able to receive accurate impressions of facts, and be able to relate truly the impressions received. \* \* \* Although many ancient proverbs indicate that some of our ancestors believed that only truth could come from childhood lips, we know through modern psychology that protective imagination is a common attribute of most children \* \* \*."

In *Crosby* v. *State,* 93 Ark. 156, 124 S.W. 781, the accused was convicted of murder in the first degree. There we reversed and remanded for a new trial because the examination of the ten-year-old witness was not comprehensive enough to establish that he had a sufficient sense of the purity of truth or the sanctity of an oath.

We think the trial court in the case at bar is governed by the standard we set in *Payne* v. *State,* 177 Ark.

413, 6 S.W. 2d 832, as to when the testimony of a child-witness is subject to exclusion. There we said:

"It is, of course, the duty of the trial court to follow closely the examination of a witness about whose competency there is a serious question on account of his youth, and if, during the course of the examination, it appears that the witness does not appreciate the questions asked him and the relevancy of the answer given, because of his youth, it would be the duty of the trial court to exclude the entire testimony of the witness, *although his preliminary examination* apparently indicated that the witness understood the obligations of an oath". [Emphasis added]

It appears that at the time of Mary Dever's preliminary examination it might have been thought that she was a competent witness. However, her subsequent testimony with its major inconsistencies and irreconcilable conflicts on material issues, some of which we have detailed, convinces us her testimony was subject to exclusion.

As previously stated, we do not think she was capable of receiving and retaining accurate impressions sufficiently to truly relate them to the fact-finders in a reasonably coherent statement. Therefore, we must hold it was error for the trial court not to remove her from the witness stand and exclude her testimony when it appeared that she did not meet the requirements reiterated in *Batchlor* v. *State, supra,* governing child witnesses in criminal cases. According to the record in the case at bar it must also be said that upon the proper objection being made, the testimony of Ronald Dever, nine years of age, was subject to challenge for the same reasons.

We deem it unnecessary to discuss the other matters relied upon by appellant for reversal. It is with great reluctance that we feel compelled to exclude this child's testimony as an instrument of justice when we consider the competent evidence. However, we feel there is no alternative in the proper administration of justice since

the character of her testimony constitutes reversible error.

Accordingly, the judgments are reversed and the causes remanded.