Edwin HOGGARD *v.* STATE of Arkansas

CR 82-25                              640 S.W.2d 102

Supreme Court of Arkansas
Opinion delivered October 4, 1982
[Rehearing denied November 8, 1982.]

118

*Ann Donovan* and *Witt & Donovan*, by: *Ann Donovan*, for appellant.

*Steve Clark*, Atty. Gen., by: *Leslie M. Powell*, Asst. Atty. Gen., for appellee.

STEELE HAYS, Justice. Edwin Hoggard appeals his conviction of rape by engaging in deviate sexual activity with a six-year-old boy. The state's case was based on the testimony of the boy that during a number of visits to appellant's apartment he had been shown pictures of homosexual acts between young men and boys with the suggestion that he and the appellant engage in similar acts. The child said he was fondled and on two occasions appellant put the child's penis in his mouth.

These charges were reported to the police by the boy's mother, and a search warrant was issued, producing an abundance of homosexual pornography, primarily of adolescent boys. One of the two counts was dismissed and the jury convicted appellant on the remaining count, resulting in a sentence of ten years and a fine of $7,500.

Appellant raises numerous points for reversal, but we affirm the trial court.

I.

Appellant attacks the search warrant from several standpoints: first, that Arkansas' obscenity statute, Ark. Stat. Ann. § 41-3565 (2) (Repl. 1977), making possession of obscene material a criminal offense, is unconstitutional. He asserts mere possession of such materials is protected by the First Amendment and cannot be made a criminal offense. The simple answer is that appellant is not charged with a violation of the statute on obscenity and, hence, he has no standing to attack the constitutionality of the statute. *Swaim v. State*, 184 Ark. 1107, 44 S.W.2d 1098 (1933).

Second, he challenges the nighttime search. A.R.Cr.P. 13.2 (c) provides that search warrants shall be executed between 6:00 a.m. and 8:00 p.m. unless the issuing judicial officer finds reasonable cause to believe the objects to be seized are "in danger of imminent removal." This warrant was executed at 9:00 p.m. upon such a finding and we think the affidavit provided reasonable cause to believe the material was in danger of imminent removal. Appellant cites *State v. Broadway*, 269 Ark. 215, 599 S.W.2d 721 (1981), where we

affirmed a trial court's suppression of evidence seized in a nighttime search. But the cases are distinguishable. There, no facts were given the issuing magistrate supporting the need for a nighttime search; the arresting officers simply stated that reasonable cause existed for an immediate search. Here, the affidavit stated that appellant was expected to leave the following morning for Conway and that he had said he sometimes took the materials, or part of them, to Conway and Little Rock. On that basis the circuit judge issuing the warrant found sufficient authority under Rule 13.2 (c) (ii), A.R.Cr.P., and we cannot say his finding was clearly erroneous.

Appellant challenges the search warrant on the ground that the affiant did not appear before the issuing judicial officer as required, he argues, by Rule 13.1 (c), A.R.Cr.P. We disagree. Rule 13.1 (c) does not require that the judicial officer interview witnesses, simply that he "may" examine them.

The argument that the affidavit does not establish the reliability of the witness under the two-fold test of *Aguilar* v. *Texas*, 378 U.S. 108 (1964), must also fail. There the Supreme Court rejected a search warrant which stated only that "affiants have received reliable information from a credible person and do believe that heroin [and other drugs] are being kept at the above premises for purposes of sale. . . . " In contrast, this affidavit goes into detail in establishing the reliability of the witnesses and the basis of their knowledge. It reveals the identity of the informants, explains their association with the appellant, states when and where the contacts occurred, and gives specific details about the materials said to be kept on the premises and their location in appellant's apartment and in his pick-up truck. The affidavit is more like one upheld in *U.S.* v. *Ventresca*, 380 U.S. 102 (1965) than the one struck down in *Aguilar*. We find it to be sufficient, when viewed with common sense.

II.

Appellant charges error in the refusal to order a discovery deposition of the young victim. The trial court did

allow an interview with the child and his mother, with the prosecuting attorney present, and granted appellant's motion for psychiatric examinations into the child's competency. Appellant concedes our A.R.Cr.P. Rule 17.4 makes it discretionary with the trial court, but he insists that due process entitled him to take the discovery of the prosecution's witnesses. Appellant cites only dictum from *Wardius v. Oregon*, 412 U.S. 470 (1973). But the fallacy is the *Wardius* court was not dealing with the issue of whether the Due Process Clause gives an accused a right of discovery, but whether an Oregon statute giving the prosecution the right of discovery from the defendant's alibi witnesses was constitutional. The test was said to be whether Oregon law gave an accused reciprocal rights of discovery from prosecution witnesses and, finding such rights to be lacking,[1] the Oregon statute was struck down. Obviously, that is not the issue here. The *Wardius* court made it clear it was not suggesting the Due Process Clause of its own force required Oregon to adopt discovery procedures in criminal cases, citing *U.S. v. Augenblick*, 393 U.S. 348 (1969) and *Cicenia v. Lagay*, 357 U.S. 504 (1958), rather it was holding that where a state imposes discovery *against* a defendant, equivalent rights must be given *to* a defendant.

We do not imply that there are never instances where due process may entitle a defendant to discovery rights, but we are unwilling to hold that due process invariably requires that an accused have the right to take the discovery deposition of the state's witnesses, including the victim. We prefer to leave the decision, as our Rule 17 A.R.Cr.P. provides, to the trial judges to be exercised on a case-by-case basis, subject to a limited review on appeal. Here, the trial judge gave the appellant the right to interview the child and his mother and granted broad permission to have the child examined as to testimonial capacity. We cannot say he should have done more.

### III.

During the interview session defense counsel asked the mother whom she had dated, which prompted the prosecut-

---

[1] Unlike Arkansas, Oregon did not require the State to reveal the names and addresses of witnesses, nor even require a bill of particulars.

ing attorney to instruct her not to answer. Appellant argues a violation of Rule 19.1 A.R.Cr.P., which provides that neither side will instruct persons, other than the defendant, to refrain from discussing a case with opposing counsel.

Whether Rule 19.1 was breached is debatable; however, the prosecutor later withdrew his objection and told the witness she could answer if she wanted. Presumably she did not, as the trial court later denied a motion to order her to answer, finding the question improper. Appellant contends he was prejudiced, because his theory of the accusations against him was that they were a figment of the child's fantasies, induced, perhaps, by a movie he was thought to have seen. However, we cannot say this was reversible error. Standing alone, the question is irrelevant, and without some clearer explanation of how this lead could only have been pursued by knowing whom the witness had dated, we can find no abuse of discretion.

## IV.

Next it is argued that the boy was not competent to testify. He was five years old when his contacts with the appellant began. Some of the alleged acts occurred after he became six. He was six and a half when the case was tried. Appellant concedes that some six year olds might be competent but he urges that this boy was unable to distinguish between fact and fantasy.

This court has consistently said no precise age of testimonial competency in children exists, and it is primarily for the trial court to determine whether a child has the ability to observe, remember and relate the truth of the matter being litigated and has a moral awareness of the duty to tell the truth. *Harris* v. *State*, 238 Ark. 780, 384 S.W.2d 477 (1964); *Batchelor* v. *State*, 217 Ark. 340, 230 S.W.2d 23 (1950); *Payne* v. *State*, 177 Ark. 413, 6 S.W.2d 832 (1926); *Needham* v. *State*, 215 Ark. 935, 224 S.W.2d 785 (1949). The issue rests within the trial court's *sound* discretion. *Guthrie* v. *State*, 188 Ark. 1081, 70 S.W.2d 39 (1934), *Batchelor* v. *State, supra*, and we will not reverse on appeal in the absence of manifest abuse, *Yother* v. *State*, 167 Ark. 492, 268 S.W. 861 (1925).

On appeal, the error of the trial court in accepting or rejecting the testimony must be clear. *Hudson* v. *State,* 207 Ark. 18, 179 S.W.2d 165 (1944). Here, the trial court went into the issue of competency in depth, conducting a hearing with experts from both sides who had examined and tested the child with evident thoroughness. Two experts testified that he was above average in intelligence, able to receive information accurately, retain it, and capable of accurately reporting events which happened to him. Granted, there are contradictions in the child's testimony, as well as some odd remarks about being chased by panthers and men with guns. But these aspects are not sufficient to reverse the trial court's ruling because, unlike the testimony in *Harris* v. *State, supra,* on the essential elements of the case the child's testimony was generally responsive and consistent. Though unable to articulate what it meant to tell a lie, he knew what it meant to tell the truth and understood he was to do so. We will not attempt to detail his testimony; we are persuaded from a thorough reading of it that the trial court ruled correctly.

## V.

The state asked the mother on redirect if she had asked her son whether he had been shown any pornographic pictures. Defense counsel objected to the question as leading and moved for a mistrial, which the trial court judge denied with the comment that the question was not answered and no damage occurred. If any prejudice occurred, which is doubtful, it was not so great that we can say the trial could not properly continue. *Cobb* v. *State,* 265 Ark. 527, 579 S.W.2d 612 (1976).

## VI.

Over appellant's objection the state was permitted to introduce a pamphlet entitled "Boy Scout Sex Manual" containing a number of photographs of boys engaged in sexual acts. Appellant contends the prejudicial effect of the exhibit greatly outweighed any probative value and it should have been excluded under Rules 608 and 403, Uniform Rules of Evidence. We readily agree the material was prejudicial, it could hardly be otherwise. But the

argument that its probative value was lacking fades under scrutiny. This pornography and the offense being tried had a clear correlation: the pornography depicted deviate sexual acts by young males and the crime charged was deviate sexual acts of a forty-two-year-old man and a six-year-old boy. More importantly, the pornography was used as the instrument by which the crime itself was solicited — the child was encouraged to look at the pictures and then encouraged to engage in it. The value of the evidence as proof of the crime is obvious.

## VII.

Appellant's next contention is that a defense motion for a directed verdict should have been granted because the statute as written does not include the acts described by the victim. The gist of the argument is, assuming the truth of the child's testimony, only the body of the accused was penetrated, i.e. the mouth of the appellant, and not the body of the victim. The argument is a throw-back to the definition of rape prior to the adoption of Ark. Stat. Ann. § 41-1803 (Repl. 1977), when the offense applied only to the forcible penetration of a female by a male. But § 41-1803 broadens the definition to eliminate the gender-based element of rape and to cover other deviate sexual acts, which earlier were generally classified as sodomy. A reading of § 41-1803 and the accompanying commentary makes such intent plain — "Deviate sexual activity" is defined as "any act of sexual gratification involving: a) the penetration, however slight, of the anus or mouth of one person by the penis of another person."

On appeal, appellant has amplified the grounds for his motion to include matters not presented to the trial court and consequently not subject to our review.

## VIII.

Finally, appellant submits there was a comment on the evidence. We are not convinced. In closing argument the prosecuting attorney told the jury the date on the information was not an element of the offense. Defense counsel

objected that this was an argument on the law and the jury had not been so instructed. The prosecutor answered that the defense could also argue the law. The trial judge responded by saying, "Well, that's right. There's been no instruction sought on that and none offered. You may proceed with your argument, but do not talk to the jury about any law except what's covered by the instructions." Whether the trial court was agreeing with the prosecutor or the defense we cannot say, but we do not construe these words as a comment on the evidence in any sense; we must reject the claim of error.

The judgment is affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. I respectfully dissent because I think both the affidavit and search warrant are as phony as a $3 bill. I also feel the material presented to the jury was inflammatory and that its prejudicial effect drastically outweighed any relevant probative value that it may possibly have contained.

The affidavit for the search warrant, made by a deputy prosecuting attorney, stated that he was contacted by officer Hanna of the Fayetteville Police Department who gave him information concerning an alleged rape and/or carnal knowledge incident. The affidavit further stated that the alleged victim's mother stated certain things which her six year old son had told her. The six year old child, in my estimation from a review of the transcript, did not understand the meaning of an oath, and allegedly stated that appellant had taken "nude" pictures of him which he kept in various places around the premises. The child also stated that there were slides and magazines "depicting young boys in a nude state, some engaging in homosexual acts, including scenes with Hoggard." This is rather mature language for a six year old who could not understand most of the questions and who stated he saw pink panthers running through his house. He allegedly said that the items, which were not described specifically, were in the appellant's room nearly every time he had visited there. It had been from two to six weeks since the alleged incident occurred. The

informants allegedly stated that appellant had mentioned he sometimes carried this material to Conway or Little Rock. Appellant had telephoned on the date of the affidavit to ask about seeing the boy. The alleged victim had told his mother, some ten days before, about the activities in which he allegedly engaged. The basis for issuing the nighttime search warrant, according to the affidavit, was that "it is feared" appellant "may leave" with some or all of the described evidence and "may be packing" it up tonight. There is not one factual statement in the affidavit to back up the nighttime search requirements as set out in our Rules of Criminal Procedure. The alleged findings were written out before any appearance was made before the issuing judge. The affiant was not sworn by the magistrate. In fact, all the magistrate did was sign a preprinted form on which the deputy prosecutor had written out in longhand certain unsupported allegations.

Rule 13.6 provides for the issuance and execution of search warrants for illegally possessing pictures and literature. However, private possession of obscene material is not illegal. According to the United States Supreme Court, an individual may possess material as obscene as he desires, so long as he does not display it to others or attempt some illegal use. *United States* v. *Thirty-seven Photographs*, 402 U.S. 363 (1971). The affidavit did not state how long the young boy had known the appellant but it did state that on almost every visit the boy made to appellant's room the material was present. There simply is nothing to support the allegation that the material was likely to be destroyed or moved before the next day. In fact, the indications on the face of this affidavit are that he would continue to hold this material in his possession. The rules state that only such materials as may be necessary "for evidentiary" use in a proceeding are to be sought. Ninety-nine percent of this material was not even introduced into evidence. The other material had been presented to the judge and had possibly been displayed before the jury even though it was not introduced. The one book which was introduced was used by the state in the closing arguments. It depicted young males in acts of masturbation and other deviate sexual activities with which appellant was not charged. The only

allegation in the information in this case is that the appellant performed fellatio on this child. It is apparent to me that this material was introduced merely to inflame the passions of the jury. The only proper material which should have been before the jury would have been materials depicting the activities with which appellant was charged.

We are not here dealing with the guilt or innocence of the appellant. That is not the issue before this court. Although he might have been found guilty in a properly conducted trial, he should not be found guilty in a trial which violates his statutory and constitutional rights. I have no objection to the punishment and consider it appropriate upon one having been given a fair trial and properly convicted by a jury. My objections in this case primarily relate to the affidavit and search warrant, which I find woefully inadequate, and to the competency of the six year old boy to testify. The principles of the Constitution hold us to high standards in allowing a search of an individual's residence. These standards simply were not met in this case. When the Constitution can be sidestepped in such a blatant manner as this, I think we must all fear for the sanctity of our homes. And as for the child's testimony, I cannot in good conscience find that a youngster of such tender age who admitted numerous fantasies to the court and who could not appreciate the meaning of an oath should be the controlling factor in this case. It seems to me that the prosecution could have made a good case against the appellant without resorting to the tactics they used here. For these reasons, I must respectfully dissent.