Richard ALFORD *v.* STATE of Arkansas

CR 86-114                                                    724 S.W.2d 151

Supreme Court of Arkansas
Opinion delivered February 16, 1987
[Rehearing denied March 16, 1987.]

244

*Terry Crabtree*, Public Defender, by: *Michael Yarbrough*, Ass't to the Public Defender, for appellant.

*Steve Clark*, Att'y Gen., by: *Mary Beth Sudduth*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant, Richard Alford, was convicted at a jury trial of first degree murder and sentenced to life in prison. For reversal, appellant argues that the trial court erred in failing to suppress evidence, including his confession, which he claims resulted from an illegal search and arrest. He further contends the court erred in denying him statements and notes of certain state witnesses and in refusing his motion for reciprocal discovery. We find the trial judge was correct in each instance, and, therefore, affirm.

Appellant's paramount argument on appeal is his assertion that the court erred in refusing to suppress the fruits of the search of the apartment in which he lived with his father, Dennis Alford, and the victim, Mildred Weiser. He argues the officers, when investigating the shooting of Weiser, instituted an illegal, warrantless search which did not fit within the exceptions of a victim-suspect search, a consensual search, a search incident to arrest, or a plain-view search.

While there are some details that remain unclear concerning Weiser's death, its aftermath and ensuing investigation are, in essential part, clear. Weiser was Dennis Alford's girlfriend, and they had lived together, along with Richard, in the Alfords' apartment for about one year. Because of some apparent difficulties which had arisen between Weiser and the Alfords, Weiser made plans to move elsewhere. On the night of April 1, 1985, she was alone with both Alfords in their apartment and whatever hostilities existed between the parties culminated in the shooting and resulting death of Weiser. Afterwards, Dennis asked a neighbor to call for an ambulance and the police. When the police arrived, Dennis was outside yelling for help and ushered Officers Dunlavy and Towner into the apartment. Officer Towner found Weiser's body on the floor, lying partly in the hallway and partly in Richard's bedroom. She had a gunshot wound to the head, and a .25 caliber automatic pistol was located in her hand. The officers testified that Dennis was emotionally upset, but his son was calm. Both Alfords related to the officers that Weiser had committed suicide.

While Dunlavy and Towner were securing the premises, Dunlavy and another officer, who had arrived on the scene, kept the Alfords in the living room area. Minutes later, two criminal investigators, Williams and Spradlin, arrived and conducted a search of the apartment. At some point in their investigation, the officers became suspicious that Weiser's death was not a suicide. Spradlin took photographs of the entire apartment and collected evidence, including the murder weapon — a .357 magnum — which was located on a shelf under some books in a closed closet in Richard's bedroom. Other weapons were located in the apartment by the officers, some with the help of Dennis.

In considering appellant's attack on the officers' warrantless search, we agree that it does not fit within the exceptions of a victim-suspect or plain-view search. Clearly, officers can make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises, *Thompson* v. *Louisiana*, 469 U.S. 17, 21 (1984) and *Mincey* v. *Arizona*, 437 U.S. 385, 392 (1977), but, here, the officers who first arrived on the scene had secured the area, and there was nothing to indicate there was another victim or that an unknown killer might be lurking on or about the premises. In addition, the search does not

fall within the plainview exception because the record reflects that, other than the .25 caliber automatic found with the victim, none of the weapons seized was in plain view, including the murder weapon — which was located on the shelf of a closed closet. Nor can the search be validated as one incident to a lawful arrest since neither the appellant nor his father had been arrested until Richard was arrested after confessing to the crime hours after the search had been conducted.

■ While we agree with part of appellant's argument, we by no means agree that the officers' search was not legal as a consensual search. In fact, the trial judge, in his memorandum opinion, concluded that the facts and surrounding circumstances of the investigation revealed that Dennis Alford impliedly consented to a warrantless search. Of course, we have held that one who has joint possession or equal authority with respect to premises, as did Dennis Alford here, has authority to permit a warrantless search. *Glason* v. *State*, 272 Ark. 28, 611 S.W.2d 752 (1981); *see also, U.S.* v. *Matlock*, 415 U.S. 164 (1974).

■ It is undisputed that the officers did not obtain a warrant, and for the search to be valid, it must fall within one of the narrow and specifically-delineated exceptions to the warrant requirement. *Thompson* v. *Louisiana, supra*, at 21. The Supreme Court also has rejected the contention that one of the exceptions to the warrant clause is a "murder-scene exception". *Mincey* v. *Arizona, supra*. Nonetheless, the Court in *Thompson* indicated that its holding in *Mincey* would not invalidate a consensual search under circumstances similar to those posed here, but that any such claim of valid consent would have to be measured against the standards of *United States* v. *Matlock, supra*, and *Schneckloth* v. *Bustamonte*, 412 U.S. 218 (1973). *Thompson, supra* at 23.

■ In *Schneckloth*, the Supreme Court held that the prosecution must prove that consent to a search was voluntary and not the product of duress or coercion, express or implied, and it is only by analyzing all the circumstances of an individual consent that it can be ascertained whether it was voluntary or coerced. 412 U.S. at 228 and 233. That Court also held while knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge

as the *sine qua non* of an effective consent. 412 U.S. at 227. Before analyzing the circumstances in the instant case, we note, too, that the Supreme Court has held that mere acquiescence to the authority of the police is not consent, and conduct that is questionable or that clearly indicates mere acquiescence to perceived police authority will not support a police search based upon the parties' alleged consent, regardless of the lack of coercion. *Bumper* v. *North Carolina*, 391 U.S. 543 (1968).

In the instant case, the trial judge determined that the holdings in *Mincey* and *Thompson* were not controlling because here there were consensual factors not present in those cases.[1] The judge concluded more than acquiescence took place on Dennis Alford's part. He requested the police officers' presence and manifested his clear willingness and permission for them to enter his apartment. Both Alfords indicated that Weiser committed suicide, thereby initially removing the possibility of a call or plea for a homicide investigation or the implication of either of the Alfords in a deliberate shooting. Dennis was cooperative throughout the investigation that evening, and, in fact, assisted the officers in locating weapons throughout the apartment after the murder weapon was located.

Appellant argues that Dennis was emotionally upset and, for that reason, was not able to prevent the search that took place or object to the photographs the officers obtained in their initial "intrusion" into the apartment. We cannot conclude the trial judge was clearly erroneous in resolving that factual argument against the appellant. *See United States* v. *Miller*, 589 F.2d 1117 (1978). We believe the trial judge was justified in inferring voluntary consent on Dennis's part since his cooperation throughout the officers' investigation and search was consistent with his denial of any involvement in a homicide. While two of the officers testified that they had a "possible impression" or "suspicion" that the .25 caliber automatic had not caused Weiser's wound, they had nothing to indicate that either of the Alfords shot Weiser.

---

[1] At this point, we reiterate that the Supreme Court in *Thompson* never actually decided whether the search there could be justified as consensual, but left that question open since it involved a factual determination which the state court was required to decide. Here, the trial court considered and decided the consensual search issue favorably to the State.

And it was not until the police took appellant to the police station that appellant suggested Weiser's death was the result of an accidental shooting on his part.

In *Schneckloth* v. *Bustamonte, supra*, the Court noted there are two competing concerns which must be accommodated in determining the meaning of a voluntary consent — the legitimate need for such searches and the equally important requirement of assuring the absence of coercion. 412 U.S. at 227. The Court expounded that, in situations where the police have some evidence of illicit activity, but lack probable cause to arrest or search, a search authorized by a valid consent may be the only means of obtaining important and reliable evidence.

Here, the officers were permissibly in the Alfords' apartment investigating a reported suicide, and no probable cause existed initially to obtain a warrant or to make an arrest. Yet, as a result of Dennis Alford's invitation into the apartment and his total cooperation in the search, the officers' search did ultimately yield substantial evidence that served as a basis for appellant's prosecution. On the facts presented in this situation, we hold the trial judge correctly upheld the search as constitutionally permissible.

For his second point, appellant contends the court erred in refusing to suppress statements he made because they were tainted by the illegal search and his illegal arrest. Of course, when considering our disposition of appellant's challenge to the search, we necessarily conclude his statements did not result from an illegal search. On the question of an illegal arrest, we cannot find in the record where the trial court ruled on that question. Nor can we find where illegal arrest — except as it resulted from an illegal search and seizure — was raised below. Thus, appellant is precluded from raising that issue for the first time on appeal. *Wicks* v. *State*, 270 Ark. 781, 606 S.W.2d 366 (1980).

In his third point for reversal, appellant argues the court wrongfully denied his request for a statement given by Dennis Alford in response to a prosecutor's subpoena. In support of his argument, he cites Rule 17.1(b)(i) of the Arkansas Rules of Criminal Procedure which requires the prosecuting attorney to disclose to the defendant the "substance of any relevant grand jury testimony." In sum, appellant argues statements taken of witnesses pursuant to a prosecutor's subpoena should be treated

and disclosed in the same manner as grand jury testimony. Of course, the short answer to appellant's argument is that Rule 17.1 fails to require a prosecutor to disclose statements or information merely because it is gained as a result of a subpoena, and appellant cites no authority nor offers any convincing argument why the rule should be otherwise. Clearly, under Rule 17.1(d), the prosecuting attorney is obliged to disclose to defense counsel any material information within the prosecutor's knowledge, possession or control, which tends to negate the guilt of the defendant as to the offense charged or would tend to reduce any resulting punishment. Here, appellant, not the State, called Dennis Alford as a witness, and there is no indication that appellant had been in any way prejudiced by appellant's failure to have received Dennis's prior statement. This court does not reverse for nonprejudicial error. *Berna* v. *State*, 282 Ark. 563, 670 S.W.2d 434 (1984).

Appellant next argues he was denied due process when he was not allowed equal discovery rights to those given the State pursuant to Ark. Stat. Ann. § 43-801 (Repl. 1977) (which authorizes prosecutors to issue subpoenas and administer oaths in all criminal matters they are investigating). Again, appellant specifically complains that the State obtained Dennis Alford's statement by subpoena, and the State, in its case-in-chief, could have offered that statement as substantive evidence. Because appellant could only obtain Dennis Alford's statement after he testified on direct, appellant asserts he was denied the "fundamental fairness" required by the due process clause. Appellant cites *Wardius* v. *Oregon*, 412 U.S. 470 (1973) in support of his argument.

We note, once again, that the State did not call Dennis Alford as its witness, so appellant's concern, that Dennis's statement could be offered as substantive evidence, was unwarranted. Even so, appellant argues, the State was permitted on cross-examination to bolster Dennis Alford's testimony by using his prior statement. In this respect, appellant's expressed concern fails to present a situation that entitles him to exercise the same subpoena power as is provided by law to the prosecutor. The *Wardius* decision does not suggest that the due process clause requires states to adopt discovery procedures in criminal cases, but rather it held that, where a state imposes discovery against a

defendant, equivalent rights must be given to a defendant. *Hoggard* v. *State*, 277 Ark. 117, 640 S.W.2d 102 (1982). The record before us fails to reflect that the State, by use of its statutory authority to subpoena witnesses, in any way abused that power in an effort to obtain witnesses against the appellant or to secrete their testimony from him before trial. Thus, we see no merit in appellant's argument.

Finally, appellant contends the trial court erred by denying his request for Officer Williams's notes made after the State examined Williams at the suppression hearing. The trial court, citing Ark. Stat. Ann. § 43-2011.3 (Repl. 1977), ruled that the appellant was not entitled to the officer's notes until after Williams testified on direct examination at trial. The State never called Williams as a witness at the trial; thus, even if we could agree to appellant's interpretation of § 43-2011.3, we fail to see how appellant was prejudiced by his failure to receive Williams's notes. While appellant contends other State witnesses testified differently than Williams regarding a point he believed showed the appellant was actually in custody during the search of the Alfords' apartment, appellant was afforded every opportunity to cross examine those witnesses at trial. As stated earlier, we will not reverse for nonprejudicial error. *Berna* v. *State, supra.*

We hold the trial court was correct in its rulings on the points raised by appellant. Therefore, we affirm.