Francis G. ARMSTRONG *v.* STATE of Arkansas

CA CR 93-125                        871 S.W.2d 420

Court of Appeals of Arkansas
En Banc
Opinion delivered March 9, 1994

74

*Bill J. Davis*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

JOHN MAUZY PITTMAN, Judge. Francis G. Armstrong appeals from his convictions at a jury trial of arson and burglary, for which he was sentenced to concurrent terms of twelve and seven years, respectively, in the Arkansas Department of Correction. We find sufficient merit in one of appellant's multiple points for appeal to warrant reversal and remand for a new trial.

Appellant first argues that the evidence was insufficient to support the findings of guilt and that the trial court erred in denying his motion for directed verdicts. We do not agree.

Appellant was charged and convicted of burglary and arson in connection with the entry into, and burning of, the home of Percy and Louise Hall. Appellant's motions for directed verdicts, properly made at the close of the State's case and at the close of all the evidence, were challenges to the sufficiency of the evidence. *Walker* v. *State*, 308 Ark. 495, 825 S.W.2d 822 (1992). In reviewing the sufficiency of the evidence on appeal, this court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the State and will affirm if there is any substantial evidence to support the finding of guilt. *Harris* v. *State*, 284 Ark. 247, 681 S.W.2d 334 (1984). Substantial evidence is evidence of such force and character that it will, with reasonable and material certainty, compel a conclusion one way or the other. Smith v. State, 308 Ark. 390, 824 S.W.2d 838 (1992). Circumstantial evidence may constitute substantial evidence. *Hill* v. *State*, 299 Ark. 327, 773 S.W.2d 424 (1989). While circumstantial evidence must exclude every other reasonable hypothesis consistent with innocence, this becomes a question for the factfinder to determine. *Bennett* v. *State*, 308 Ark. 393, 825 S.W.2d 560 (1992).

On December 17, 1991, the home of Percy and Louise Hall was partially burned. Ms. Hall is appellant's former wife. On the morning of the fire, no one had been at home since approximately 7:30. The fire was reported at 10:33 a.m., and the fire truck was en route to the scene by 10:38. An investigation indicated that the fire started at a single source in the bathroom near a wall separating the bathroom and kitchen. Glenn Sligh, an Arkansas State Police investigator, ruled out a nearby water heater as the cause of the fire and opined that the fire was of incendiary origin. The only evidence of burglary was that someone entered the

house to start the fire. *See* Ark. Code Ann. § 5-39-101(1) (1987). Investigator Sligh testified that the bathroom door had been closed. Sligh further testified that closing the door would cause the fire to burn slowly, thus indicating that an arsonist would be allowed to escape before the fire was detected. Sligh collected debris samples and sent them to the Arkansas State Crime Laboratory where they were analyzed by Ann Hoff. Ms. Hoff testified that when she tested the material, she found residue of ethyl alcohol, a fast-burning accelerant.

Danny Joe Armstrong, appellant's twelve-year-old son, testified that appellant had threatened to burn the Halls' house when he learned that his former wife had married Mr. Hall. Danny also testified that a key to the house was kept in a flower bed near the house.

Mary Coon testified that she rented a room in her trailer to appellant in late 1989 or 1990 and that he had told her that he could burn a house without leaving a trace by using alcohol. Ms. Coon testified that appellant offered to burn her trailer in that manner. She also stated that she had heard appellant say that he would like to burn the Halls' house.

Gladys Hudson testified that she saw a tall, lean man wearing dark clothing and a hat walk away from the Halls' house at approximately 9:55 to 10:00 on the morning of the fire. Mrs. Hudson could not identify this individual as appellant.

Fire Chief Troy Alphin testified that the fire truck had already been dispatched to the Hall's property when he arrived at the fire station. He stated that while en route to the fire scene, he met appellant, who was driving in the opposite direction from the Halls' home. He stated that this occurred no later than 11:00 a.m.

Appellant testified that, when Chief Alphin asked him about the fire, he waived his rights and made a statement. He denied setting the fire. He testified that on the morning of the fire he drove to the C & D Grocery for coffee. He testified that he left the store at around 8:45 a.m. Appellant stated that he then drove directly to the home of Ed and Sue Cross, less than a mile away. He testified that he had been at the Crosses' home for thirty to forty minutes when the fire truck passed, and that he stayed there drinking coffee until approximately 11:00 a.m. Appellant testi-

fied that the feelings between the Halls and him were bitter, and that his son was under their influence and was not truthful in his testimony.

The Crosses' home is approximately one-half mile from the Halls' home. Sue Cross testified that she thought appellant arrived at her house between 9:30 and 10:00 a.m., but that it could have been as late as 10:15. She testified that he left at approximately 11:00 a.m. She heard the fire truck, which passed between 10:30 and 10:45, and stated that appellant left her home fifteen to twenty minutes later.

Appellant contends that his son's testimony was not worthy of belief because he was "under the complete control" of the Halls, who had bitter feelings toward appellant. He discounts Ms. Coon's testimony because she "obvious[ly]" did not like appellant and was a friend to the Halls. He also argues that there was no direct evidence that he was closer than one-half mile from the Halls' home, and points out that his version of his whereabouts was corroborated by Ms. Cross.

Under our standard of review, we do not weigh the evidence favorable to the State against that favorable to an accused. *Tiller* v. *State*, 42 Ark. App. 64, 864 S.W.2d 730 (1993). The credibility of the witnesses and the weight to be given to their testimony are matters solely within the province of the jury. *Atkins* v. *State*, 310 Ark. 295, 836 S.W.2d 367 (1992). Moreover, the jury is free to accept those portions of the testimony that it finds worthy of belief and reject those portions deemed false. *Brown* v. *State*, 278 Ark. 604, 648 S.W.2d 67 (1983). On appeal, it is permissible to consider only that proof that tends to support the finding of guilt. *Tiller* v. *State, supra.*

From our review of the record, we cannot conclude that the trial court erred in denying appellant's motions for directed verdicts. Clearly, the expert testimony that the fire was of incendiary origin and the evidence that someone had entered the house in order to start the fire was sufficient to support the findings that burglary and arson had been committed. We also conclude that the issue of appellant's responsibility for the crimes was properly submitted to the jury in light of the circumstantial evidence in this case, including the threats appellant made to his

son and Mary Coon; appellant's offer to burn Ms. Coon's trailer by using alcohol; evidence that ethyl alcohol was used as an accelerant in this case; evidence that the fire burned slowly at first, causing a delay in its being detected and reported; and the improbability of appellant's testimony that he drove directly from the grocery store to the Crosses' home less than one mile away, and his resulting unexplained location and activities for a crucial period of time, when one considers appellant's testimony that he left the store at 8:45 and Ms. Cross's testimony that he did not arrive at her home until between 9:30 and 10:15.

At trial, the State moved in limine to prohibit appellant from introducing evidence of earlier fire losses experienced by Percy Hall. Appellant proffered Hall's testimony. Hall admitted that the 1991 fire for which appellant was being tried was the third residential fire that he (Hall) had suffered in the last seven years. Although he denied having set any of the fires, he admitted that a former girlfriend had given a statement implicating him in one of them. Hall also admitted that he had tried to implicate appellant in one of the two prior fires. Hall stated that he was insured for the first two fire losses. He stated that he had no insurance on the last structure, but admitted that his wife collected $3,100.00 under a policy covering her personal belongings. Finding that appellant had no evidence that Hall had set the previous fires, the trial court held the proffered evidence irrelevant and granted the States's motion in limine.

Appellant argues that proof of Hall's three residential fires within seven years was clearly relevant to the issues in this case and could have served to create in the jury a reasonable doubt as to appellant's guilt. We agree and reverse and remand on this point.

Rule 401 of the Arkansas Rules of Evidence provides that relevant evidence is evidence having any tendency to make the existence of any fact of consequence more probable or less probable than it would be without the evidence. Rule 403 provides that, although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Determining the relevance of evidence and gauging its probative value against unfair prejudice are matters within the trial court's

discretion, the exercise of which will not be reversed on appeal in the absence of abuse. *Smith* v. *State*, 33 Ark. App. 37, 801 S.W.2d 655 (1990).

We agree with the State and the trial court that there was no direct evidence that Hall deliberately set the previous fires. Nevertheless, it cannot be denied that the occurrence of the previous fires was relevant. In order to convict appellant, the jury was required to find beyond a reasonable doubt that appellant had entered the Hall's home for the purpose of committing an offense, that the fire was deliberately set, and that appellant was the person who set it. Where, as here, circumstantial evidence is relied on, the jury must also determine that the evidence excludes every reasonable hypothesis consistent with the accused's innocence. The very fact that this alleged victim had recently suffered two residential fires of unexplained origin certainly had a tendency to make it less probable either that this third fire was deliberately set or, even if it was incendiary, that appellant was the person who set it. To deny appellant the opportunity to present evidence of even the occurrence of the prior fires denied him one significant chance of both raising a reasonable doubt as to his guilt and presenting a reasonable hypothesis consistent with his innocence. We must conclude that the trial court erred in finding the evidence irrelevant to the issues in the case.

Nor can we agree with the State that the evidence was inadmissible under Ark. R. Evid. 404(b). That rule provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

First, we cannot agree that the evidence was necessarily offered as proof of a crime, wrong, or act by Hall or to prove his character. As noted above, the very *occurrence* of the relatively recent prior incidents of fire was relevant. Second, even if offered as evidence of Hall's intentional acts or his carelessness with fire, the prior fires would be independently relevant. Where the issue of whether a fire was set deliberately in order to claim insurance is

material, the existence of other fires, if not too remote in time or dissimilar in circumstances, may be admissible as relevant to show motive or intent. *See Johnson* v. *Truck Insurance Exchange*, 285 Ark. 479, 688 S.W.2d 728 (1985). Likewise, we think that, where it is material whether a criminal defendant has intentionally burned a third person's property, proof that the third person has suffered prior unintentional fires is relevant to show the existence of yet another mistake or accident.

We cannot agree, however, with appellant's argument that the trial court erred in refusing to admit evidence that appellant's truck burned while he was in jail or that a tractor belonging to Sherry Frisby burned the day she posted a bond to secure appellant's pretrial release from jail. Appellant has neither cited authority nor made a convincing argument on this point, *see Gardner* v. *State*, 296 Ark. 41, 754 S.W.2d 518 (1988), and we cannot conclude that the trial court erred in finding this evidence irrelevant.

Appellant next contends that the trial court erred in denying his motion to dismiss because of improper use of the prosecutor's subpoena power and his motion to obtain copies of the prosecutor's notes taken during questioning of the persons subpoenaed. Appellant argued at trial that the prosecutor used her subpoena power to interview certain witnesses within two weeks before trial and claimed that their testimony was tainted as a result of intimidation. He also complained that the subpoena power was a tool not provided to a defendant and that its use by the prosecutor therefore violated the Supreme Court's decision in *Wardius* v. *Oregon*, 412 U.S. 470 (1973). The prosecutor stated that these witnesses were subpoenaed as part of an on-going investigation in an attempt to determine if there were validity to defense claims that Hall had burned his home. When the court asked appellant's counsel which of the witnesses he contended had been intimidated, counsel supplied no names and could not indicate how their testimony was tainted. The trial judge stated that he did not think the law provided for dismissal of the prosecution as a remedy. He stated that appellant's counsel was free to "make a record, . . . to question these witnesses and see what their reaction is." He then stated that he could not grant the motion "at this time." Appellant then asked that the prosecutor be ordered to deliver copies of her notes taken during the interviews. This request was denied.

We first note that appellant cites no authority for the proposition that dismissal of the prosecution would be an appropriate remedy for an alleged unequal discovery scheme or misuse of a prosecutor's subpoena power. In any event, we could not conclude from this record that any prejudicial error occurred. Appellant's reliance on *Wardius* v. *Oregon, supra,* is misplaced. As noted by our supreme court in *Hoggard* v. *State*, 277 Ark. 117, 640 S.W.2d 102 (1982), *Wardius* dealt with whether an Oregon statute giving the prosecution the right of discovery from the defendant's alibi witnesses was constitutional in light of the fact that Oregon did not require the State to reveal the names and addresses of its witnesses or even provide a bill of particulars. "The test was said to be whether Oregon law gave the accused reciprocal rights of discovery from prosecution witnesses and, finding such rights to be lacking, the Oregon statute was struck down." 277 Ark. at 121, 640 S.W.2d at 105.

Here, the only witnesses in question were those who had been subpoenaed and interviewed by the prosecutor. However, of those persons, all but one were called as witnesses at trial by appellant, not the State. The one witness called by the State was Gladys Hudson. Ms. Hudson testified only that she saw a tall, lean man walking away from the Halls' home shortly before it was reported to be on fire. She could not identify appellant as the man she saw, and we can find no reference in the record to any physical description of appellant. Nor has appellant, at any time, claimed any surprise by Ms. Hudson's testimony. Moreover, although the trial court offered appellant the opportunity to question the witnesses regarding his claim of intimidation, appellant did not use the opportunity, and he points us to nothing in his abstract to indicate that any witness's testimony changed after being interviewed by the prosecutor. Under these circumstances, we conclude that appellant has failed to show any prejudicial error. *See Parker* v. *State*, 292 Ark. 421, 731 S.W.2d 756 (1987); *Alford* v. *State*, 291 Ark. 243, 724 S.W.2d 151 (1987).

Also unavailing is appellant's argument that the trial court erred under Ark. R. Crim. P. 17.1 in denying his motion seeking the prosecutor's notes. Ordinarily, the prosecuting attorney need not furnish the defendant with statements taken pursuant to a subpoena, but must only disclose any material information within the prosecutor's knowledge, possession, or control, which

would tend to negate the defendant's guilt of the offense charged or to reduce any resulting punishment. Ark. R. Crim. P. 17.1(d). Because, as discussed above, appellant has failed to show how any information acquired by the State prejudiced his defense, we find no error. *See Parker* v. *State, supra; Alford* v. *State, supra.*

Appellant next contends that the trial court erred in denying his motion in limine by which he sought to exclude any reference to his conviction, two weeks prior to this trial, for possession of marijuana with intent to deliver. Appellant also contends that the trial court erred in allowing the State to cross-examine him about the circumstances surrounding that offense. We find no error.

The trial judge ruled that the prosecutor could ask about appellant's conviction under Ark. R. Evid. 609(a). However, the court reserved ruling on the admissibility of the circumstances surrounding the offense, but instructed the prosecutor not to ask questions concerning events leading up to the conviction without first approaching the bench to advise the court of the questions to be asked. Appellant testified on direct examination that he had recently purchased marijuana and pleaded guilty to the felony of possession of a controlled substance with intent to deliver. On cross-examination by the prosecutor, appellant stated that he had intended to give the marijuana he purchased to another person, but he denied that other person was James Cross, the son of defense witnesses Ed and Sue Cross. Appellant admitted; however, that James Cross was with him when he purchased the marijuana. The prosecuting attorney asked these questions without having first approached the bench as previously ordered. However, appellant did not object or move for a mistrial.

The supreme court has recently held that a party whose motion in limine has been denied does not waive his objection by being the first to broach the subject of the motion when examining a witness. *Burnett* v. *Fowler*, 315 Ark. 646, 869 S.W.2d 694 (1994). Nevertheless, we cannot agree with appellant that the trial court erred in ruling proof of the prior conviction admissible. Rule 609(a) of the Arkansas Rules of Evidence provides that proof that a witness has been convicted of a felony is admissible for the purpose of attacking the witness's credibility if the court determines that the probative value of the

conviction outweighs its prejudicial effect. This determination is discretionary with the trial court, whose decision will not be reversed in the absence of abuse. *Bell* v. *State*, 6 Ark. App. 388, 644 S.W.2d 601 (1982). From our review of the record, we cannot conclude that the trial court abused its discretion in permitting evidence of appellant's conviction here. In light of the fact that the court initially reserved ruling on whether the State could question appellant about any particulars of the offense, and the fact that appellant wholly failed to object or obtain a ruling at the time the State asked such questions, we find that appellant has failed to preserve this second aspect of his argument. *See Vickers* v. *State*, 313 Ark. 64, 852 S.W.2d 787 (1993); *Walker* v. *State*, 301 Ark. 218, 783 S.W.2d 44 (1990).

Appellant also argues that the court failed to address and make a ruling as to the specific factors set out in *Bell* v. *State, supra,* in determining whether the probative value of the appellant's prior conviction outweighed its prejudicial effect. Appellant failed to make any such request of the trial court. Moreover, appellant cites no authority, and we know of none, requiring that the court specifically address or rule on those individual factors.

Finally, appellant contends that the trial court erred by denying his proffered, non-model jury instruction on the common law presumption against arson. Instructions that do not conform to the model instructions should be given only when the trial court finds that the model instructions do not adequately state the law or do not contain a necessary instruction on the subject. *Ross* v. *State*, 300 Ark. 369, 779 S.W.2d 161 (1989). Here, the trial judge specifically found that the model instructions adequately stated the law. Appellant, however, has failed to abstract the instructions given, our review of which is necessary in order to determine whether they adequately covered the issue addressed in appellant's proffered instruction. On this record, we cannot say that the trial court erred in refusing the appellant's jury instruction. *See id.*

Reversed and remanded.

COOPER and MAYFIELD, JJ., dissent.

JAMES R. COOPER, Judge, dissenting. I dissent because I

believe that the evidence is insufficient to sustain the appellant's convictions of burglary and arson. I submit that there is sufficient evidence from the record for the jury to find that the Hall residence partially burned on December 17, 1991; that the fire started as a result of arson, with ethyl-alcohol used as the accelerant; that the appellant had been heard to threaten to burn the Hall house; that the appellant had offered to burn his landlord's trailer a year or two earlier, said that he could do it without a trace using alcohol, and told the landlord that he would like to burn the Hall house; that a tall lean man wearing dark clothing and a hat walked away from the Hall house about 10:00 a.m. on the morning of the fire; and that the fire chief met the appellant on a road some miles from the fire scene around 11:00 a.m.

However, even conceding that the State proved the facts enumerated above, I submit that the evidence is insufficient because there is not one scintilla of evidence that would permit a rational trier of fact to conclude that the appellant ever entered the Hall residence.

Due process requires the State to prove beyond a reasonable doubt every element of the crime charged. *In re Winship*, 397 U.S. 358 (1970). Arkansas Code Annotated § 5-39-201 (1987) provides that burglary is committed when a person enters or remains unlawfully in an occupiable structure with the purpose of committing an offense punishable by imprisonment. Entry into a building and specific criminal intent are clearly essential elements of the crime of burglary. *Norton* v. *State*, 271 Ark. 451, 609 S.W.2d 1 (1980); *Selph* v. *State*, 264 Ark. 197, 570 S.W.2d 256 (1978). Furthermore, a defendant's mere presence at the scene of a fire is insufficient to establish that the defendant intentionally set it. *See Bray* v. *State*, 12 Ark. App. 53, 670 S.W.2d 822 (1984).

Where a defendant's fingerprint was found on a piece of glass outside a broken kitchen window and a television set was stolen from inside the house, this Court held that evidence was insufficient to support a finding that the appellant ever entered the victim's house. We held that such a finding would be based on speculation and conjecture. We also noted that the fingerprint was the *only* evidence connecting the appellant with the crime. *Holloway* v. *State*, 11 Ark. App. 69, 666 S.W.2d 410 (1984).

However, fingerprints found *inside* a building have been held sufficient to prove entry. *Brown* v. *State*, 310 Ark. 428, 837 S.W.2d 457 (1992); *Howard* v. *State*, 286 Ark. 479, 695 S.W.2d 375 (1985); *Ebsen* v. *State*, 249 Ark. 477, 459 S.W.2d 548 (1970). In *Ward* v. *Lockhart*, 481 F.2d 844 (8th Cir. 1988), the United States Court of Appeals, Eighth Circuit, held in a habeas corpus proceeding that a burglary conviction had to be reversed because there was no evidence of entry, even in the face of the appellant's possession of band instruments recently stolen from a school.[1] The *Ward* case is significant because its facts are perfectly analogous to those presented in the case at bar. Although the Eighth Circuit noted that there was sufficient evidence to support a conviction for theft of property or theft by receiving, it nevertheless held that the evidence was insufficient to permit a legal inference that Ward was also guilty of burglary because there was no evidence to establish entry, which is an essential element of that offense. I think it is especially important to note that the Eighth Circuit arrived at this result despite evidence that Ward fled after being questioned concerning his ownership of the instruments. Flight is evidence of intent, as are the threats made by the appellant in the case at bar, but this evidence of intent was nevertheless insufficient to establish entry, as would be necessary to sustain the burglary conviction in *Ward*. *See Ward* v. *Lockhart, supra.*

I concede that the appellant in the case at bar said he knew how to burn a house without a trace, said he wanted to burn the Hall house, threatened to do so, that someone did commit arson (presumably the unidentified man seen leaving the house), and that the appellant was within a couple of miles of the fire scene. Nevertheless, in the absence of even a shred of evidence to prove the appellant ever set foot in the Hall house the day of the fire, the appellant's burglary conviction is not supported by substantial evidence. *See Ward* v. *Lockhart, supra.* Furthermore, because it is clear that the appellant could not commit the arson without also committing burglary, reversal of his burglary conviction requires reversal of his conviction for arson as well.

MAYFIELD, J., joins in this dissent.

---

[1] This Court had affirmed the conviction by a 3-3 vote, 8 Ark. App. 209, 649 S.W.2d 849; and the Arkansas Supreme Court had affirmed by a 5-2 vote, 280 Ark. 353, 658 S.W.2d 379 (1983).